*In re* YASMINE P. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Michael P., Respondent-Appellant).

Third District No. 3—01—0594

Opinion filed April 3, 2002.

Louis P. Milot, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOMER delivered the opinion of the court:

The State filed juvenile petitions for wardship, alleging that the minors, Yasmine P. and Jeremy P., born December 21, 1994, and October 4, 1996, respectively, were abused and neglected. Respondent Michael P. stipulated that the State could prove its allegations. Accordingly, the court granted the petition on grounds that respondent had physically abused the minors' mother, Marjorie R., and a stepdaughter, Miriam L., and that he had sexually abused Yasmine and another stepdaughter, Samantha L.

The State subsequently filed a petition to terminate respondent's parental rights on the ground of depravity (750 ILCS 50/1(D)(i) (West 2000)). Following separate hearings, the court found respondent unfit and terminated his parental rights. Respondent appeals, contending that (1) hearsay documents introduced by the State at the unfitness hearing were improperly admitted into evidence, and (2) the State's evidence was insufficient to prove him unfit to be a parent. We affirm.

## FACTS

At the unfitness hearing of May 9, 2001, the State introduced certified copies of respondent's convictions for three offenses committed in 1999. Respondent pled guilty to the aggravated assault of a police officer in January 1999 and to domestic battery based on choking and hitting Marjorie on May 15, 1999. He also entered into a plea agreement in which he pled guilty to predatory criminal sexual assault of seven-year-old Samantha, in exchange for a 12-year prison sentence. Respondent was living in the household with Marjorie and her four children at the time of all three offenses.

The State also presented certified medical records and a report of an examining physician of the Pediatric Resource Center relating to

an examination of Yasmine. The examination revealed scarring on the fossa navicularis, which the physician found consistent with a reported history of digital penetration of the vagina. Finally, before presenting its witnesses, the State introduced a certified and delegated report of a psychological evaluation of respondent conducted on February 16, 2000, at the request of the Department of Children and Family Services. The psychological evaluation materials indicated that respondent's denial of sexual misconduct with the children was false. Respondent objected to the admission of the psychological evaluation and pediatric records on grounds of relevancy and hearsay. The court admitted the psychological evaluation over respondent's objection and reserved ruling on his hearsay objection to the pediatric documents pending further evidence.

The State then introduced Peoria County sheriff's investigator Dave Doubet, who testified that he interviewed Samantha on July 29, 1999. Doubet testified that respondent had forced Samantha to suck his penis in the summer of 1999. She described "white, globby stuff" that came out, which she had to clean off the bed. Samantha said respondent warned her "to be quiet about it."

On July 30, 1999, Doubet interviewed respondent. At that time, respondent denied Samantha's allegations. However, he admitted that he had beaten Marjorie in 1998 and left her lying on the roadside with a broken eardrum.

On September 13, 1999, Doubet interviewed Yasmine. After Yasmine demonstrated that she knew the difference between the truth and lies, she told Doubet that respondent had put his "fingers in her butt." She showed Doubet the conduct by rubbing her hands on her vagina. She said the rubbing lasted "a long time" and it happened in her bedroom at night "a lot of times" when respondent lived with them. Yasmine said she told respondent it hurt and she cried when he did it to her.

After the State rested, the court overruled respondent's objection to the pediatric documents. Respondent then testified on his own behalf. Respondent said he was studying the Bible and taking a college class while serving a 12-year prison term for the predatory criminal sexual assault of Samantha. Respondent admitted the sexual assault of Samantha and admitted that he was physically abusive to the children and Marjorie. However, he stated that the allegations concerning Yasmine were false. On cross-examination, respondent admitted that he had used drugs and alcohol most of his adult life. He completed a drug treatment program several years earlier, but was using drugs and alcohol again in 1999 when he committed the offense against Samantha. Respondent said he tried to get into a drug treatment program in

prison, but this request was refused because of the length of his sentence.

Following arguments of counsel, the court found that the State had proved depravity by clear and convincing evidence. At the ensuing best interest hearing, the court found that it was in the best interests of Yasmine and Jeremy to terminate respondent's parental rights. Accordingly, the court granted the State's petition.

## ISSUES AND ANALYSIS

On appeal, respondent first argues that the court erred in admitting hearsay evidence at the unfitness hearing, because application of the hearsay exception in section 2—18(4) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2—18(4) (West 2000)) violated respondent's constitutional equal protection guarantees. Respondent contends that the foundational requirement for the admission of medical and psychological reports is relaxed when parental termination proceedings are initiated under the Juvenile Court, as opposed to when the proceedings are initiated under the Adoption Act (750 ILCS 50/1 *et seq.* (West 2000)). He argues that as a consequence of this relaxed standard, a parent such as he, facing parental termination proceedings initiated under the Juvenile Court Act, is treated more harshly than a parent facing similar proceedings initiated under the Adoption Act. We do not agree.

■ Generally, statutes are presumed to be constitutional, and it is the burden of the party challenging a statute to clearly establish a constitutional violation. *Miller v. Rosenberg*, 196 Ill. 2d 50, 749 N.E.2d 946 (2001). Guarantees of equal protection under the federal and state constitutions require that the government treat similarly situated individuals in a similar manner. *In re R.C.*, 195 Ill. 2d 291, 745 N.E.2d 1233 (2001). Thus, the State may not accord different treatment to persons who have been placed by statute into different classes on the basis of criteria wholly unrelated to the purpose of legislation. *R.C.*, 195 Ill. 2d 291, 745 N.E.2d 1233.

■ An examination of the Adoption Act and the Juvenile Court Act discloses that parents facing termination proceedings under the two acts are not accorded different treatment with respect to the admission of records relating to parental unfitness. Looking first to the Adoption Act, we note that section 2.1 specifically provides that the Adoption Act "shall be construed in concert with the Juvenile Court Act of 1987." 750 ILCS 50/2.1 (West 2000). Next, we note that the Juvenile Court Act provides rules relating to certain evidence in juvenile proceedings, including hearings to determine parental unfitness under the Adoption Act. See 705 ILCS 405/2—18 (West 2000).

Specifically, section 2—18(4)(a) of the Juvenile Court Act provides that certified records of hospitals and public or private agencies concerning a condition, act, occurrence or event relating to a minor in an abuse, neglect or dependency proceeding shall be admissible as proof of the condition, act, occurrence or event. 705 ILCS 405/2—18(4)(a) (West 2000). This provision permits such certified records to be admitted at trial without the additional foundational requirements of the business records exception to the hearsay rule. See 145 Ill. 2d R. 236.

Reading the Adoption Act in concert with the Juvenile Court Act, we reject respondent's equal protection position. The Adoption Act has no special provision relating to the admission of evidence of child abuse, neglect or dependency. Consequently, the hearsay exception contained in section 2—18(4)(a) of the Juvenile Court Act would apply equally, whether suit to terminate parental rights is initiated under the Juvenile Court Act or the Adoption Act. Thus, with respect to the admission of certified documents relating to Yasmine's medical examination and respondent's psychological evaluation, respondent has not shown that the treatment he received under the Juvenile Court Act was different from the treatment he would have received had the parental unfitness proceeding been initiated under the Adoption Act.

Within the context of his equal protection argument, respondent also asserts that he was denied due process of law. Specifically, he claims that his right of confrontation was denied by the admission of hearsay testimony under section 2—18(4)(a), and he was deprived of notice that provisions of the Juvenile Court Act would be applied at the unfitness hearing. We reject both arguments.

■ The certification requirement of section 2—18(4)(a) ensures an adequate indicia of reliability for the admissibility of documentary evidence in an abuse, neglect or dependency proceeding. The circumstances of the making of such documents, including lack of personal knowledge of the maker, may be proved to affect the weight to be accorded to the evidence, but does not affect its admissibility. 705 ILCS 405/2—18(4)(c) (West 2000). The records introduced in the instant case were properly certified and were not so unreliable as to constitute a confrontation clause violation. See *In re A.P.*, 179 Ill. 2d 184, 688 N.E.2d 642 (1997) (rejecting respondent father's confrontation clause argument with respect to admission of minor's hearsay statements under section 2—18(4)(c)).

■ Further, respondent's lack-of-notice argument is more in the nature of an "ignorance of the law" defense than a due process claim. It is well settled that all persons are presumed to know the law. *In re Estate of Malone*, 198 Ill. App. 3d 960, 556 N.E.2d 678 (1990). In this case, respondent acknowledges that he was given notice in the State's

petition that an adjudication of parental unfitness was sought on the ground of depravity under the Adoption Act (750 ILCS 50/1(D)(i) (West 2000)). As previously noted, the Adoption Act specifically provides that it shall be construed in concert with the Juvenile Court Act. Therefore, respondent was deemed to know that the hearsay exception contained in section 2—18(4)(a) of the Juvenile Court Act was applicable at the unfitness hearing.

■ Next, respondent argues that section 2—18(4)(a) applies only to adjudications of neglect, abuse and dependence. He submits that a parental unfitness hearing is not an "abuse, neglect or dependency proceeding." Therefore, he contends, the records of Yasmine's physical examination and his own psychological evaluation should not have been admitted based on certification pursuant to section 2—18(4)(a). This argument is being made for the first time on appeal. As such, it has not been properly preserved for appeal and is waived. See *People v. Lewis*, 165 Ill. 2d 305, 651 N.E.2d 72 (1995). Respondent does not contend that review is appropriate under the plain error doctrine or that counsel was ineffective for failing to preserve this issue for review. Consequently waiver applies. *People v. Casillas*, 195 Ill. 2d 461, 749 N.E.2d 864 (2000).

■ As his last issue, respondent argues that the State's evidence of unfitness based on depravity was insufficient.

Depravity is defined as an inherent deficiency of moral sense and rectitude. *In re Abdullah*, 85 Ill. 2d 300, 423 N.E.2d 915 (1981). Where depravity is alleged as a statutory ground of parental unfitness, the trial judge is required to closely scrutinize the character and credibility of the parent. *In re A.L.*, 301 Ill. App. 3d 198, 702 N.E.2d 1021 (1998). A finding of unfitness must be supported by clear and convincing evidence. *In re Allen*, 172 Ill. App. 3d 950, 527 N.E.2d 647 (1988). An act of sexual penetration with a child member of the respondent's household may, in itself, be sufficient to support a finding of depravity. See 750 ILCS 50/1(D)(i)(5) (West 2000); *In re S.H.*, 284 Ill. App. 3d 392, 672 N.E.2d 403 (1996); *In re J.B.*, 298 Ill. App. 3d 250, 698 N.E.2d 550 (1998). Also, a series of convictions showing a pattern of criminality will support a finding of depravity. *In re Dawn H.*, 281 Ill. App. 3d 746, 667 N.E.2d 485 (1996). On review, the trial court's determination will not be reversed unless it is contrary to the manifest weight of the evidence. *A.L.*, 301 Ill. App. 3d 198, 702 N.E.2d 1021.

In this case, the State's evidence of depravity consisted of certified convictions of three recent offenses—one Class X felony predatory criminal sexual assault of a stepdaughter and two misdemeanor batteries—and testimony establishing that respondent had also battered the minors' mother in 1998 and minimized his culpability for that of-

fense. All of the offenses involved acts of violence. In addition, respondent admitted abusing drugs and alcohol. He also admitted physically abusing the minors and their mother. Although respondent persisted in denying that he had sexually assaulted Yasmine, there was sufficient other evidence from which the trial court could have concluded that respondent had committed the acts she described.

Based on our careful review of the record, we hold that the trial court's finding of depravity was not contrary to the manifest weight of the evidence. Accordingly, we affirm the court's finding of unfitness.

## CONCLUSION

For the reasons stated, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

McDADE and SLATER, JJ., concur.