776 N.E.2d 794 (2002)
333 Ill. App.3d 893
267 Ill.Dec. 422
In re PRECIOUS W., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
Blanche B., Respondent-Appellant).
No. 3-01-0924.
Appellate Court of Illinois, Third District.
August 29, 2002.
*796 Susan O. Johnson (Court-appointed), Peoria, for B.B.
John X. Breslin, Deputy Director, State's Attorneys Appellate Prosecutor, Ottawa, Kevin W. Lyons, State's Attorney, Peoria, Robert M. Hansen, State's Attorneys Appellate Prosecutor, Ottawa, for the People.
Justice McDADE delivered the opinion of the court:
The trial court found the respondent, Blanche B., to be an unfit parent because of her habitual drunkenness and drug addiction (750 ILCS 50/1(D)(k) (West 2000)), and because she failed to make reasonable progress (750 ILCS 50/1(D)(m)(ii) (West 2000)). The court terminated her parental rights regarding her daughter, Precious W. (705 ILCS 405/2-29(2) (West 2000)). On appeal, the respondent argues that (1) the trial court erred in finding her unfit due to habitual drunkenness and drug addiction because it considered evidence exceeding one year prior to the State filing its petition to terminate her parental rights; (2) the State did not prove her habitual drunkenness and drug addiction by clear and convincing evidence; (3) the State did not prove that she failed to make reasonable progress by clear and convincing evidence; (4) the court abused its discretion at the fitness hearing by admitting certain health care records under a hearsay exception; and (5) it was not in her daughter's best interest to terminate respondent's parental rights. We affirm.

BACKGROUND
The State filed a juvenile petition on December 15, 1999, alleging that Precious was neglected because her environment was injurious to her welfare. The petition contended that the respondent was abusing drugs and alcohol during the pregnancy and after Precious' birth. At a shelter care hearing that same day, the court placed Precious in the temporary custody of the Department of Children and Family Services (DCFS).
The court found Precious to be neglected on January 11, 2000. The court's February 22, 2000, dispositional order stated that the respondent was unfit.
On December 5, 2000, the State petitioned to terminate the respondent's parental rights. In this petition, the State alleged that she was unfit because she had failed to make reasonable progress. The State filed a supplemental petition on March 19, 2001, contending that the respondent was also unfit because of her habitual drunkenness and addiction to drugs for at least one year immediately prior to the supplemental petition. In an order issued the same day, the court found that "the one year period commences with today's filing and does not relate back to [the] filing of [the] original [petition for termination of parental rights]."
At the fitness hearing, the parties disagreed concerning the time period for the habitual drunkenness and drug addiction count. The respondent argued that the evidence should be limited to the one-year period from March 19, 2000, to March 19, 2001. The State contended that the time *797 period included, but was not limited to, that one-year period. The court agreed with the State.
Later during the unfitness hearing, the respondent objected to the admission of various health care records of the respondent and an older child of hers. The respondent argued that the records were not admissible under the hearsay exception in section 2-18(4)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/2-18(4)(a) (West 2000)). The court overruled the respondent's objections and admitted the records. These records show that the respondent was admitted to the hospital smelling heavily of alcohol four days before giving birth to one of Precious' siblings in 1994. At the time of that child's birth, the respondent was described as a severe alcoholic with a consistent history of drug abuse. That baby was born exposed to cocaine, marijuana, and alcohol.
On September 20, 1999, while pregnant with Precious, the respondent's urine specimen tested positive for cocaine. On November 11, 1999, she reported that she drank alcohol daily, ingested cocaine nightly, and smoked marijuana once every two to three months. On November 19, 1999, the respondent had a blood-alcohol level of.075. She was diagnosed as alcohol dependent and abusing cocaine and marijuana. Precious was born on December 10, 1999.
During the fitness hearing, Pamela Coats testified that she was the DCFS caseworker when Precious was born. Coats referred the respondent to a drug and alcohol treatment program and a parenting program on March 6 or 7, 2000. The record shows that the respondent committed the offense of possession of cocaine on March 9, 2000.
The DCFS case was transferred to Dana Coventry, who urged the respondent to begin her drug and alcohol treatment program several times between April 6, 2000, and June 7, 2000. During one of her visits, Coventry asked the respondent to complete a urine specimen drop, but the respondent refused, complaining that she was ill. Coventry testified that, other than this one time, she did not schedule the urine specimen drops with the respondent. The drops were to be scheduled by the drug and alcohol treatment program, which the respondent was not attending at that time.
The respondent went for a drug and alcohol assessment on June 14, 2000. At this assessment, the respondent admitted that she had drunk 6 to 12 beers daily since she was 13 years old. She said that she last drank alcohol on May 25, 2000.
The drug and alcohol treatment staff attempted to contact the respondent several times during the remainder of the summer of 2000. The respondent first attended treatment on September 18, 2000, but her attendance was sporadic thereafter. Her urine specimens tested positive for cocaine on September 25, 2000, and October 25, 2000. On November 14, 2000, the respondent began serving a two-year prison sentence for the above-mentioned cocaine possession conviction. The judge in this case ruled that the respondent was unfit both because she failed to make reasonable progress and because of her habitual drunkenness and drug addiction.
At the best interest hearing on October 10, 2001, the court considered the best interest report prepared by DCFS. The report states that Precious was doing well and appeared to be happy in her foster home. She had bonded with her foster parents and their children. The foster parents were willing to adopt Precious. She was attending preschool, which she seemed to enjoy. DCFS recommended that the respondent's parental rights be *798 terminated so that Precious could be adopted by her foster parents.
The parties stipulated that the respondent's release date from prison would be December 21, 2001. While in prison, she had completed eight months of voluntary substance abuse treatment. The respondent's attorney urged the court to consider the respondent's rehabilitative potential.
The court ruled that it was in Precious' best interest to terminate the respondent's parental rights. The respondent appealed.

ANALYSIS

I. FITNESS

A. Habitual Drunkenness and Drug Addiction
The respondent argues that the court erred in finding her unfit because of her habitual drunkenness and drug addiction. She contends that the court should not have considered evidence beyond one year prior to the State filing its supplemental petition to terminate her parental rights. She also submits that the State failed to prove this count of unfitness by clear and convincing evidence.
A parent is unfit if the parent exhibits habitual drunkenness or addiction to drugs for at least one year immediately prior to the commencement of the unfitness proceeding. 750 ILCS 50/1(D)(k) (West 2000). At the trial court, the State must prove parental unfitness by clear and convincing evidence. A finding of unfitness will not be reversed on appeal unless it is against the manifest weight of the evidence. In re J.J., 316 Ill.App.3d 817, 250 Ill.Dec. 103, 737 N.E.2d 1080 (2000). Even if the State alleged more than one count of unfitness, only one count need be proved to find a parent unfit. In re J.A., 316 Ill.App.3d 553, 249 Ill.Dec. 484, 736 N.E.2d 678 (2000).

1. One-year Period
Recently, the Illinois Supreme Court considered the same time period question that is at issue in this case. In re J.J., 201 Ill.2d 236, 267 Ill.Dec. 1, 776 N.E.2d 138 (2002). The court ruled that the State must prove that the respondent was habitually drunk or addicted to drugs during the one year immediately prior to filing the petition. If that burden is met, the State also may submit evidence of habitual drunkenness or drug addiction prior to that year.
With exceptions not applicable here, an appellate court reviews a trial court's evidentiary rulings for an abuse of discretion. Jackson v. Graham, 323 Ill.App.3d 766, 257 Ill.Dec. 330, 753 N.E.2d 525 (2001).
In the present case, the State submitted evidence of the respondent's habitual drunkenness and drug addiction for the relevant one-year period. The State also provided evidence from before that period. Under J.J., the trial court did not abuse its discretion by admitting evidence from before the one-year period.
The respondent also argues that the trial judge's March 19, 2001, ruling limited the scope of the evidence to one year. The record does not support the respondent's argument. The judge's ruling merely clarified that the one-year period was to be calculated from March 19, 2001, rather than from December 5, 2000.

2. Clear and Convincing Evidence
The respondent contends that the only evidence of her habitual drunkenness and drug addiction during the one-year period was (1) drinking 6 to 12 beers on May 25, 2000, and (2) urine specimens indicating cocaine use on September 25, 2000, and October 25, 2000. She submits that such evidence does not clearly and convincingly show habitual drunkenness and drug addiction *799 during that year. She also argues that because the State's supplemental petition alleged drunkenness "and" drug addiction, rather than the statute's language of drunkenness "or" drug addiction, the State initially was required to prove both drunkenness for the year and drug addiction for the year.
A finding of habitual drunkenness depends on proof that the individual (1) had a fixed habit of drinking to excess, and (2) used alcohol so frequently that the individual could not control the need or craving for it. J.J., 316 Ill.App.3d 817, 250 Ill.Dec. 103, 737 N.E.2d 1080. "Addiction to drugs" under section 1(D)(k) means the inability or unwillingness to refrain from the use of drugs where frequent indulgence has caused an habitual craving, manifested by an ongoing pattern of drug use. As with habitual drunkenness, evidence of indulgence without intermission is not necessary to prove drug addiction. It is sufficient to show that a person has demonstrated an inability to control his or her habitual craving. In re D.M., 298 Ill.App.3d 574, 232 Ill.Dec. 765, 699 N.E.2d 212 (1998).
In this case, the one-year period was from March 19, 2000, to March 19, 2001. The State's evidence showed that the respondent admitted drinking 6 to 12 beers daily from the age of 13 through May 25, 2000. This evidence, therefore, covered a period from March 19, 2000, through May 25, 2000. It was not necessary for the State to show that she was continuously abusing alcohol during the entire year in question. This evidence clearly and convincingly showed that the respondent drank excessively on a daily basis and could not control her craving and need for alcohol.
The respondent's urine tested positive for cocaine on two occasions during the one-year period after she entered the treatment program, knowing that the program scheduled random urine specimens. This evidence clearly and convincingly showed that the respondent could not control her habitual craving for the drug. Therefore, the State proved both that the respondent was habitually drunk and that she was addicted to drugs during the one-year period.
Having met its initial burden, the State's evidence of the respondent's drug and alcohol abuse before the one-year period showed the habitual nature of her drunkenness and drug addiction even more clearly and convincingly. We rule that it was not against the manifest weight of the evidence for the court to have found the respondent unfit on this basis. Having held that the respondent was unfit on this count, we need not address whether the respondent was unfit because of her lack of reasonable progress. See J.A., 316 Ill. App.3d 553, 249 Ill.Dec. 484, 736 N.E.2d 678.

B. Health Care Records and the Hearsay Exception
The respondent submits that the court erred by admitting health care records of the respondent and another of the respondent's children under section 2-18(4)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/2-18(4)(a) (West 2000)). The respondent argues that (1) the health care records of the respondent and the respondent's older child were not "records relating to" Precious; (2) the records admitted at the fitness hearing were not part of "an abuse, neglect, or dependency proceeding"; and (3) because termination petitions are filed under the Adoption Act (750 ILCS 50/0.01 et seq. (West 2000)) rather than the Juvenile Court Act (705 ILCS 405/1-1 et seq. (West 2000)), the hearsay exception in section 2-18(4)(a) of the Juvenile Court Act is inapplicable to *800 termination proceedings under the Adoption Act. Section 2-18(4)(a) states:
"Any writing, record, photograph or x-ray of any hospital or public or private agency * * * made as a memorandum or record of any condition, act, transaction, occurrence or event relating to a minor in an abuse, neglect or dependency proceeding, shall be admissible in evidence as proof of that condition, act, transaction, occurrence or event * * *." 705 ILCS 405/2-18(4)(a) (West 2000).

1. Health Care Records of the Respondent and Precious' Older Sibling
A trial court may admit the health care records of the respondent of a termination petition under section 2-18(4)(a) at a fitness hearing. In re M.S., 210 Ill. App.3d 1085, 155 Ill.Dec. 671, 569 N.E.2d 1282 (1991).
Where the intent of a statute can be determined from its plain language, that intent must prevail. Unless otherwise defined in the statute, terms are to be ascribed their ordinary and popularly understood meanings. Lukwinski v. Stone Container Corp., 312 Ill.App.3d 385, 244 Ill.Dec. 690, 726 N.E.2d 665 (2000).
The State relies upon D.M., 298 Ill. App.3d 574, 232 Ill.Dec. 765, 699 N.E.2d 212, for the proposition that the health care records of a respondent's child, other than a child who is the subject of the termination petition, are admissible under section 2-18(4)(a) at a fitness hearing. D.M. does not so hold. The facts of D.M. state that the health care records of one of the respondent's other children were admitted in evidence. However, the respondent in D.M. did not contest the admissibility of these records. Therefore, we find D.M. to be inapposite to the present case. Nonetheless, we find that under the plain language of section 2-18(4)(a), the health care records of one of Precious' older siblings concerning the condition that brought about Precious' removal from the respondent (habitual drunkenness and drug addiction) related to Precious.

2. Whether a Fitness Hearing is an Abuse, Neglect, or Dependency Proceeding
As we recently noted in In re Yasmine P., 328 Ill.App.3d 1005, 263 Ill.Dec. 141, 767 N.E.2d 867 (2002), section 2.1 of the Adoption Act specifically provides that the Adoption Act "shall be construed in concert with the Juvenile Court Act of 1987." 750 ILCS 50/2.1 (West 2000).
In this case, we hold that when the two acts are construed together, a fitness hearing under the Adoption Act is a continuation of the abuse, neglect, or dependency proceedings of the Juvenile Court Act.

3. Whether Section 2-18(4)(a) of the Juvenile Court Act is Applicable in a Proceeding under the Adoption Act
In Yasmine P., 328 Ill.App.3d 1005, 263 Ill.Dec. 141, 767 N.E.2d 867 (2002), we held that the hearsay exception in section 2-18(4)(a) of the Juvenile Court Act is applicable in a fitness hearing brought under the Adoption Act. Therefore, we reject the respondent's argument that section 2-18(4)(a) was inapplicable in this case.
The health care records of the respondent and Precious' older sibling were admissible under section 2-18(4)(a). The trial court did not abuse its discretion by admitting these records in evidence.

II. Best Interest
The respondent contends that it was not in Precious' best interest to terminate respondent's parental rights.
First, the respondent relies upon this court's ruling in In re B.C., 247 Ill.App.3d 803, 187 Ill.Dec. 486, 617 N.E.2d 1207 (1993), for the proposition that at the trial *801 court, the State must prove by clear and convincing evidence that it is in the best interest of the child to terminate the parent's rights. She acknowledges that more recently, this court ruled in In re V.O., 284 Ill.App.3d 686, 220 Ill.Dec. 527, 673 N.E.2d 439 (1996), that consideration of a child's best interest does not require clear and convincing evidence from the State but, rather, is within the sound discretion of the trial judge. In V.O., we specifically set aside our previous holding concerning the burden of proof in B.C. We see no reason to disturb V.O. Thus, we reject the respondent's assertion that the State must prove that termination is in the child's best interest by clear and convincing evidence.
Next, the respondent submits that the trial court's termination of a parent's rights will not be reversed unless it is against the manifest weight of the evidence. She relies upon the recent ruling in In re M.F., 326 Ill.App.3d 1110, 261 Ill.Dec. 132, 762 N.E.2d 701 (2002), by the Illinois Appellate Court, Fourth District, for this standard of review. We respectfully disagree with the Fourth District's holding in M.F. Again, we see no reason to disturb V.O., in which we ruled that the termination of a parent's rights based on a child's best interest will not be reversed absent an abuse of the trial court's discretion. V.O., 284 Ill.App.3d 686, 220 Ill.Dec. 527, 673 N.E.2d 439.
In determining a child's best interest, the trial court shall consider (1) the physical safety and welfare of the child; (2) the child's sense of attachment; and (3) the child's need for permanence, including stability and continuity of relationships with parent figures. 705 ILCS 405/1-3(4.05)(a), (d), (g) (West 2000).
Applying the standards of proof and review articulated in V.O. to this case, we hold that the trial court did not abuse its discretion. The record showed that the respondent had not demonstrated that she could control her habitual drunkenness and drug addiction outside the structured environment of prison, which directly affected Precious' physical safety and welfare. The best interest report noted that Precious had developed attachments to her foster parents, their children, and to her preschool. The record indicated that Precious' need for permanence weighed against waiting to see if the respondent could control her substance abuse problems once released from prison. Therefore, the trial court did not err by finding it in Precious' best interest to terminate the respondent's parental rights.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the Peoria County circuit court.
Affirmed.
HOMER and HOLDRIDGE, JJ., concur.