SECOND DIVISION
FEBRUARY 1, 2011

1-10-1406

| | | |
|---|---|---|
| *In re* S.J., a Minor | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 07 JA 1062 |
| | ) | |
| Thomas Dyckman, | ) | Honorable |
| | ) | Maxwell Griffin, Jr., |
| Respondent-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Justices Karnezis and Connors concurred in the judgment and opinion.

**OPINION**

On April 30, 2010, the parental rights of the minor S.J.'s mother and father, the respondent, Thomas Dyckman (Dyckman), were terminated by the circuit court of Cook County. A guardian with the right to consent to adoption was appointed for S.J. Dyckman appeals from the judgment of the circuit court of Cook County. He argues that he was deprived of equal protection of the law because the trial court erroneously interpreted the intent of the legislature and used less restrictive rules of evidence applicable to abuse and neglect adjudications pursuant to the Juvenile Court Act of 1987 (705 ILCS 405/2-18(4)(a) (West 2008)), rather than the rules applicable to involuntary termination of parental rights proceedings under the Adoption Act (750 ILCS 50/0.01 *et seq*. (West 2008)). For the following reasons, we affirm the judgment of the circuit court of Cook County.

BACKGROUND

On December 13, 2007, the State filed a petition in the circuit court of Cook County for adjudication of wardship of the minor girl, 13-day-old S.J. S.J.'s mother was found to be unfit (705 ILCS 405/2-3(1)(b), (2)(ii) (West 2006)), based on the following: prior reports of neglect and harm regarding her other six minor children who were or had been under the care of the Illinois Department of Children and Family Services (DCFS); noncompliance with drug treatment services; and a history of psychiatric problems. S.J.'s paternity had not been established at the time of the adjudication of wardship although Dyckman was said to be the putative father. The juvenile court entered an order giving the State temporary custody of S.J. An order of parentage testing was entered on December 20, 2007, and on January 15, 2008, the trial court entered an order finding that Dyckman was S.J.'s father.

On March 25, 2008, after a hearing in the circuit court of Cook County, S.J. was adjudicated to be neglected because of the injurious environment in which she lived. 705 ILCS 405/2-3(1)(b) (West 2008). There was a disposition hearing on April 14, 2008, wherein S.J. was adjudicated a ward of the court and the trial court entered an order of protective supervision pursuant to section 2-25 of the Juvenile Court Act (705 ILCS 405/2-25 (West 2008)). S.J.'s mother was granted custody of S.J., but specific conditions were imposed. On August 13, 2008, the court entered findings that the mother had violated the court's order of protective supervision and was unfit to protect and care for S.J. As a consequence, the trial court granted guardianship and custody of S.J. to DCFS.

On August 19, 2009, the State filed a supplemental petition for the appointment of a guardian

2

with the right to consent to the adoption of S.J. pursuant to the Adoption Act and the Juvenile Court Act. The supplemental petition alleged various grounds on which S.J.'s mother and Dyckman should be found unfit as parents. The allegations specific to Dyckman were: (1) failure to maintain a reasonable degree of interest, concern or responsibility as to S.J.'s welfare (750 ILCS 50/1(D)(b) (West 2008)) and (2) failure to make reasonable efforts to correct conditions which were the bases for the removal of S.J. from the home and/or failure to make reasonable progress toward the return of S.J. within nine months after the adjudication of neglect, from March 27, 2008, to December 27, 2008, and/or within any nine-month period after the finding of neglect, including the period from December 27, 2008, to September 27, 2009 (750 ILCS 50/1(D)(m) (West 2008)).

A trial to determine the fitness of both parents was held on March 9, 2010, and April 28, 2010. The evidence presented against Dyckman during the trial demonstrated his lack of interest and involvement with S.J. Further, the evidence showed that he was not willing to make lifestyle changes to create a safe environment for S.J. and he was noncompliant in attending parenting classes. There was also evidence that he and S.J.'s mother continued to live together, in spite of the mother's substance abuse and expressed homicidal ideations.

On April 30, 2010, the trial court entered a finding of unfitness as to Dyckman on the grounds listed in the State's petition. The trial court also found S.J.'s mother unfit. The trial court ruled that it was in S.J.'s best interests that the parental rights of both parents be terminated. The court then appointed DCFS as S.J.'s guardian, granting the guardian the right to consent to S.J.'s adoption. 705 ILCS 405/2-29(2) (West 2008).

Dyckman filed a timely appeal on May 18, 2010. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303

(eff. May 30, 2008); R. 306A (eff. Sept. 1, 2006). On appeal, Dyckman raises two issues: (1) whether he was deprived of equal protection of the law under the federal and state constitutions because the trial court used less restrictive rules of evidence applicable to abuse and neglect adjudications pursuant to the Juvenile Court Act (705 ILCS 405/2-18 (West 2008)), rather than using the rules of evidence applicable to involuntary termination of parental rights proceedings under the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2008)); and (2) whether the legislature intended that the phrase "construed in concert with the Juvenile Court Act," contained in the Adoption Act (750 ILCS 50/2.1 (West 2008)), should be interpreted to mean that a trial court shall apply the rules of evidence found in section 2-18(4)(a) of the Juvenile Court Act (705 ILCS 405/2-18(4)(a) (West 2008)), during the fitness portion of the State's petition brought under the Adoption Act to involuntarily terminate parental rights.

ANALYSIS

The first issue Dyckman raises concerns his equal protection rights under the federal and state constitutions with regard to the rules of evidence that were used by the trial court in the hearing in which his parental rights were terminated. During the hearing on the termination of his parental rights Dyckman did not object to the evidence on constitutional grounds, as he is now attempting to argue. Thus, he cannot raise this issue for the first time on appeal. *Vine Street Clinic v. HealthLink, Inc.*, 222 Ill. 2d 276, 301, 856 N.E.2d 422, 438 (2006). Dyckman cites a case concerning equal protection, *In re Yasmine P.*, 328 Ill. App. 3d 1005, 767 N.E.2d 867 (2002). In that case, the respondent unsuccessfully made the argument that Dyckman is now attempting to make. However, Dyckman does not articulate the argument from *In re Yasmine P.* upon which he relies, nor does he

analyze its applicability to this case.  Further, our review of the record makes it clear that a plain error analysis is inapplicable to this case (*In re M.W.*, 232 Ill. 2d 408, 430-31, 905 N.E.2d 757, 772-73 (2009)), and Dyckman did not attempt to make that argument on appeal.  Accordingly, the argument is forfeited. *People v. Ward*, 215 Ill. 2d 317, 332, 830 N.E.2d 556, 564 (2005).  Therefore, we will not address Dyckman's constitutional issue further. .

The second issue raised by Dyckman is whether the legislature intended that the phrase "construed in concert with the Juvenile Court Act" contained in the Adoption Act should mean that a trial court shall apply the rules of evidence found in section 2-18(4) of the Juvenile Court Act during the fitness portion of a trial brought under the Adoption Act to involuntarily terminate parental rights. The interpretation of a statute by a reviewing court is *de novo*. *Illinois Department of Healthcare & Family Services v. Warner*, 227 Ill. 2d 223, 229, 882 N.E.2d 557, 560 (2008).  The primary objective of statutory interpretation is to give effect to the intent of the legislature.  In so doing, the language of the statute is to be given its plain and ordinary meaning. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308, 776 N.E.2d 218, 223 (2002).

The Adoption Act allows for involuntary termination of parental rights if there is a determination that a parent is unfit as defined in section 1(D) of the Act.  750 ILCS 50/1(D) (West 2008).  Section 1(D)(h) includes neglect as a ground for a finding of parental unfitness.  That section goes on to state:

> "[I]n making a finding of unfitness the court hearing the adoption proceeding shall not be bound by any previous finding, order or judgment affecting or determining the rights of the parents toward the

child sought to be adopted in any other proceeding except such proceedings terminating parental rights as shall be had under either this Act, the Juvenile Court Act or the Juvenile Court Act of 1987."

750 ILCS 50/1(D)(h) (West 2008).

Section 2.1 of the Adoption Acts provides, in pertinent part, that "[it] shall be construed in concert with the Juvenile Court Act." 750 ILCS 50/2.1 (West 2008). Dyckman argues that this reference does not mean that the rules governing admissibility of evidence in neglect proceedings under the Juvenile Court Act apply, or are transposed, to the rules of evidence in a hearing to terminate parental rights under the Adoption Act. Included in Dyckman's opening brief is the record of portions of the legislative debates and comments surrounding the passage of Senate Bills 1324 and 1325, which codified the cross-reference of the two statutes. The legislative discussion includes the goal of discouraging "baby-selling" and making it more difficult to consent to termination of parental rights. Thus, neither the legislative discussion and comments nor the plain language of the statute supports Dyckman's argument.

During the hearing on Dyckman's fitness as a parent, he objected several times to evidence submitted by the State. However, for purposes of this appeal and the issue before us, we are only concerned with evidence that related to Dyckman's fitness as a parent. We do not review, nor are we concerned with, evidence pertaining to S.J.'s mother because she is not a party to this appeal.

We look to Illinois cases which have interpreted the rules of evidence applicable in hearings to terminate parental rights under the Adoption and Juvenile Court Acts. In the case of *In re Yasmine P.*, the respondent father appealed the termination of his parental rights on the grounds of violation

of his equal protection guarantees. *Yasmine P.*, 328 Ill. App. 3d at 1009, 767 N.E.2d at 870. In that case, the respondent argued that he was denied equal protection of the law when the trial court allowed admission of hearsay medical reports during a hearing for termination of his parental rights. He argued that the trial court erred in allowing evidence to be admitted under the more relaxed standard of the Juvenile Court Act rather than the stricter standard which would be applied under the Adoption Act. *Yasmine P.*, 328 Ill. App. 3d at 1009, 767 N.E.2d at 870.

The appellate court examined both Acts and found that parents facing termination proceedings under both Acts were not accorded different treatment with respect to the admission of evidence relating to parental unfitness. *Id.* The appellate court cited the language in section 2.1 of the Adoption Act which provided that it shall be construed in concert with the Juvenile Court Act. 750 ILCS 50/2.1 (West 2000). The Juvenile Court Act provided rules relating to admission of certain evidence in hearings to determine parental unfitness under the Adoption Act. Specifically, section 2-18(4)(a) of the Juvenile Court Act provides:

> "Any writing, record, photograph or x-ray of any hospital or public or private agency *** made as a memorandum or record of any condition, act, transaction, occurrence or event relating to a minor in an abuse, neglect or dependency proceeding, shall be admissible in evidence as proof of that condition, act, transaction, occurrence or event, if the court finds that the document was made in the regular course of the business of the hospital or agency and that it was in the regular course of such business to make it, at the time of the act,

transaction, occurrence or event, or within a reasonable time thereafter." 705 ILCS 405/2-18(4)(a) (West 2000).

"This provision permits such certified records to be admitted at trial without the additional foundational requirements of the business records exception to the hearsay rule. See 145 Ill. 2d R. 236." *Yasmine P.*, 328 Ill. App. 3d at 1010, 767 N.E.2d at 870. The appellate court in *Yasmine P.* noted that because the Adoption Act does not contain any special provision relating to admission of evidence of child abuse, neglect or dependency, the hearsay exception contained in section 2-18(4)(a) of the Juvenile Court Act applied equally in lawsuits to terminate parental rights under either the Juvenile Court Act or the Adoption Act. *Id.*

Another case which examined the admissibility of evidence in a proceeding to terminate parental rights is *In re Precious W.*, 333 Ill. App. 3d 893, 776 N.E.2d 794 (2002). In that case, the respondent mother appealed the termination of her parental rights based on, among other grounds, the argument that the trial court erred in admitting health care records of herself and one of her older children into evidence. The respondent in that case advanced the argument that the hearsay exception in section 2-18(4)(a) of the Juvenile Court Act was inapplicable to the termination proceedings under the Adoption Act. The appellate court in *Precious W.* noted that when the Adoption Act and the Juvenile Court Act are construed together, the fitness hearing under the Adoption Act is a continuation of the abuse, neglect, or dependency proceeding of the Juvenile Court Act. *Precious W.*, 333 Ill. App. 3d at 901, 776 N.E.2d at 800. The appellate court in *Precious W.* went on to refer to *In re Yasmine P.*, and reaffirmed the finding that the hearsay exception in section 2-18(4)(a) of the Juvenile Court Act is applicable to a fitness hearing pursuant to the Adoption Act. *Precious W.*, 333

Ill. App. 3d at 901, 776 N.E.2d at 800.

Accordingly, we do not agree with Dyckman's argument that the legislature did not intend to include the rules of evidence delineated in the Juvenile Court Act when a trial court is conducting a hearing regarding the termination of parental rights under the Adoption Act. In contrast to Dyckman's argument, we find the statutory interpretations contained in established case law to be controlling and inapposite to Dyckman's argument.

Our review of the record establishes that the evidence applicable to Dyckman was admitted by the trial court as a certified record under the appropriate rules of evidence, based on applicable case law. Therefore, we affirm the judgment of the circuit court of Cook County which terminated the parental rights of Dyckman regarding the minor, S.J.

Affirmed.