# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### In re J.Y., 2011 IL App (3d) 100727

---

| | |
|---|---|
| Appellate Court Caption | *In re* J.Y., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Ashlee S., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-10-0727 |
| Filed | November 30, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings arising from the broken leg suffered by respondent's child, the trial court abused its discretion in admitting a letter from a physician who examined the child stating the fracture was "highly suspicious for abuse," since the trial court failed to satisfy the requirements of section 2-18(4)(a) of the Juvenile Court Act, the State called no witnesses to testify how the letter was prepared, there was no evidence the letter was prepared in the normal course of business and the letter was not a standard business record or medical record; however, the error was harmless where the letter did not play a substantial part in the trial court's decision, the determination of neglect was not against the manifest weight of the evidence, and the trial court did not err in finding respondent unfit. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 10-JA-170; the Hon. Richard D. McCoy, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Louis P. Milot (argued), of Peoria, for appellant.

Jerry Brady, State's Attorney, of Peoria (Terry A. Mertel and Judith Z.
Kelly (argued), both of State's Attorneys Appellate Prosecutor's Office,
of counsel), for the People.

Panel                  JUSTICE O'BRIEN delivered the judgment of the court, with opinion.

Justice McDade concurred in the judgment and opinion.

Justice Holdridge specially concurred, with opinion.

**OPINION**

¶ 1       The State filed a juvenile neglect petition against respondent Ashlee S. concerning her
son, J.Y. A neglect finding was entered, and the trial court found Ashlee unfit and appointed
the Department of Children and Family Services (DCFS) guardian of J.Y. Ashlee appealed.
We affirm.

¶ 2                                    FACTS

¶ 3       The State filed a petition alleging neglect of J.Y., a minor. The petition stated that J.Y.'s
environment was injurious to his welfare because: (1) between May 31, 2010, and June 2,
2010, the minor's leg was fractured and the injury could not have occurred absent abuse
and/or neglect by respondent Ashlee S., the minor's mother, and/or the father; (2) the minor's
father was previously found unfit in two separate cases in another county without a
subsequent finding of fitness; (3) the minor's father had a criminal history; (4) the minor's
father has a substance abuse problem; and (5) Ashlee and the minor's father were previously
indicated for risk of harm by DCFS on two separate occasions. Ashlee and the minor's father
stipulated to evidence supporting allegations (2), (3), and (5). A shelter care hearing took
place and the trial court entered an order placing the minor in temporary custody of DCFS.

¶ 4       DCFS consented to an examination of the minor and authorizing the Pediatric Resource
Center (PRC) to evaluate the minor for child abuse or neglect. DCFS provided its
investigative reports and the minor's medical records to PRC. The information was then
forwarded to Channing Petrak, a doctor on staff at PRC. The information disclosed that on
June 1, 2010, the minor was taken to the hospital, where he was diagnosed with a fracture
of the right tibia. The information also disclosed that Ashlee had stated that J.Y. was injured
on May 31, 2010, when the family dog jumped on him. Petrak's notes reflect that on June
1, 2010, she examined J.Y. personally and reviewed his vital signs, lab results, and radiology
report. After reviewing her own notes and the information provided by DCFS, Petrak drafted

a letter dated July 14, 2010, that set forth her impressions on J.Y.'s injury. She opined that it "is not plausible that [the minor's] leg was fractured early on May 31, 2010, yet [the minor] showed no signs of pain until the night of May 31, 2010 or morning of June 1, 2010." Petrak stated that the minor's injury as a fracture is not typically seen with accidental injury but is associated with "non-accidental trauma" and is "highly suspicious for abuse." The letter explains that the shearing force associated with similar fractures can occur due to holding and shaking an infant by the chest with the limbs whiplashing back and forth. Petrak acknowledged that J.Y.'s CT head scan and MRI were normal. The letter further provides that the history Ashlee gave was not consistent with the minor's injury. In Petrak's opinion, J.Y.'s fracture is "most consistent with inflicted trauma."

¶ 5    At an adjudicatory hearing on August 9, 2010, Peoria detective Marilyn Robinson testified that on June 2, 2010, she was called to St. Francis Hospital (OSF), where she spoke with DCFS representatives. She observed J.Y. and did not see any bruising or swelling on his leg. She interviewed J.Y.'s parents. The father told Robinson that on the afternoon of May 31, 2010, he and Ashlee were taking J.Y to his grandmother's house. Ashlee was in the front passenger seat of the father's truck and J.Y.'s father put him in the backseat. He heard J.Y. crying and noticed that the dog had jumped into the car and on J.Y. Ashlee told Robinson that J.Y. cried a little but she did not see any marks or blood on him. After returning from the grandmother's house around 9 p.m., J.Y. was fussy. Because he was pulling his legs up to his stomach, Ashlee thought J.Y. had a stomach ache. She gave him peppermint water and he slept through the night. When he woke up, J.Y. again began pulling his legs up to this stomach. He started crying when his father touched his leg so they took J.Y. to the hospital. Robinson went to J.Y.'s house and observed a large dog, weighing between 100 to 115 pounds.

¶ 6    The State moved for the admission into evidence of the certified records of OSF and the PRC. Ashlee objected to the admission of the PRC records, particularly the July 14, 2010, letter from Petrak, which she argued was a document prepared in anticipation of litigation. The trial court sustained Ashlee's objection to the July 14 letter. The trial court thereafter entered an order vacating its original ruling on the letter and admitted it into evidence. The trial court stated:

    "It has *** come to the court's attention that Peoria County JA court *stare decisis* exists allowing the admission of the subject PRC's writing, for it has been an established practice in this court (at least for the immediately preceding three judges presiding in the JA court) that PRC written reports are admissible under section 2-18. The rationale is that the report is made shortly after the occurrence in the ordinary course of the PRC's business of providing diagnosis, as contemplated by section 2-18. Somewhat superfluously, it is believed that one or more unpublished, Rule 23 Third District rulings support that established practice, but none has actually been produced to date.

    The evidentiary ruling is accordingly vacated, and conversely, the writing is admitted into evidence. There is no need for the prosecution to produce the author or establish additional foundation."

¶ 7    The adjudicatory hearing resumed and Ashlee testified. She stated that she saw her 100-

pound dog run from the front of the house and jump in the open door of the truck and onto J.Y.'s car seat. Ashlee believed that the dog thought it was going for a car ride, which it had done before. Both of the dog's front paws landed on J.Y.'s right leg. She took him out of his car seat, looked him over and did not see any marks or bruises. Ashlee "shushed" the minor until he calmed down about five minutes after the incident. She checked J.Y. throughout the day but never saw any bruising. After they returned home, J.Y. slept for 10 hours but woke up screaming. She thought he had a stomach ache and took him to OSF. An x-ray revealed that his right tibia was fractured. The location of the fracture matched where the dog had landed on J.Y.

¶ 8        Following arguments, the trial court stated:

"We have a 2-month-old with a broken leg. We have parents who have a long history of DCFS[-]indicated findings for risk of harm to children, and we have a father who's got a criminal conviction for endangering the life or health of a minor. So just based on those cold hard facts alone, nothing else at all, those indisputable facts are more than enough to sustain a finding by a preponderance of the evidence that this broken leg was the result of abuse or neglect.

The Court does not–and I want to make the record clear–the Court does not at all buy the theory that the dog jumped on the minor and broke the minor's leg. So despite those indisputable facts that I just mentioned, if you add the explanation given by the mom, which is from where I sit incredible in large part, her testimony actually strengthens the theory of the State; add that the father didn't testify at all, and it adds a little more strength. Finally, if you add this Pediatric Resource Center letter, whether it's superfluous or not, then the case is proven by the most difficult burden of proof, which we don't even need in this context."

¶ 9        The trial court found that J.Y.'s injury was found by some sort of abuse or neglect, "thus producing an injurious environment." After a dispositional hearing where the parties did not offer additional evidence, the trial court found it was in J.Y.'s best interest to be made a ward of the State and that both parents were unfit. It awarded guardianship of the minor to DCFS. Ashlee appealed.

¶ 10                                        ANALYSIS

¶ 11       There are three issues on appeal: whether the trial court erred in admitting business records, in finding neglect, and in finding the mother unfit.

¶ 12       We begin with a consideration of whether the trial court improperly admitted Petrak's July 14 letter as a business record. Ashlee argues that Petrak's July 14 letter was improperly admitted as a business record under section 2-18(4)(a) of the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/2-18(4)(a) (West 2010)). She complains that the letter was prepared in anticipation of litigation, that it does not qualify as a medical or business record, and that it is inadmissible.

¶ 13       The Juvenile Act specifically provides for the admission of business records into evidence when statutory foundational requirements are met. 705 ILCS 405/2-18(4)(a) (West 2010); *In re A.B.*, 308 Ill. App. 3d 227, 234-35 (1999). To establish a foundation, the

proponent must show the writing was (1) made as a memorandum or record of the condition or event; (2) made in the ordinary course of business; and (3) made at the time of the event or within a reasonable time thereafter. 705 ILCS 405/2-18(4)(a) (West 2010); *A.B.*, 308 Ill. App. 3d at 235. The author of the writing does not need to testify; anyone familiar with the business and its procedures may testify about how the writing was prepared. *In re Yasmine P.*, 328 Ill. App. 3d 1005, 1010 (2002). Records prepared in anticipation of litigation are not made in the regular course of business and are not admissible as business records. *A.B.*, 308 Ill. App. 3d at 236. Diagnoses and opinions in medical records are admissible under the business records exception. *Troyan v. Reyes*, 367 Ill. App. 3d 729, 734 (2006); *A.B.*, 308 Ill. App. 3d at 236 (client service plans made in the regular course of agency business were admissible); *In re Kenneth J.*, 352 Ill. App. 3d 967, 983-84 (2004) (same). We review the admission of evidence pursuant to section 2-18(4)(a) for an abuse of discretion. *In re Precious W.*, 333 Ill. App. 3d 893, 901 (2002).

¶ 14 The State did not satisfy the requirements of section 2-18(4)(a). The State failed to call any witnesses, including Petrak, to testify how her letter was prepared. It simply moved for its admission. Ashlee objected and the State responded that the function of the PRC is to examine children and make findings, and that the letter was prepared in the ordinary course of the PRC's business. The only foundational evidence that the State presented came from its argument. It offered no evidence demonstrating that Petrak's letter was made in the regular course of PRC's business. The letter was not a standard business record or medical record admissible under section 2-18(a)(4). The trial court abused its discretion in admitting Petrak's letter.

¶ 15 In reversing its initial decision and admitting the letter, the trial court noted the established practice of the Peoria County juvenile courts to allow the admission of PRC writings under section 2-18(4)(a) of the Juvenile Act. The trial court concluded that *stare decisis* mandated the letter's admission. The doctrine of *stare decisis* "expresses the policy of the courts to stand by precedents and not to disturb settled points." (Internal quotation mark omitted). *People v. Colon*, 225 Ill. 2d 125, 145 (2007). However, the determination of whether a writing is admissible under section 2-18(4)(a) of the Juvenile Act must be governed by the facts of each individual case. *Stare decisis* is not an inflexible command, and if a court has made a mistake, it will correct it in spite of *stare decisis*. *Colin*, 225 Ill. 2d at 146. That PRC writings were admitted in prior juvenile proceedings does not excuse a party from satisfying section 2-18(4)(a) requirements. We conclude that the trial court's reliance on *stare decisis* was misguided. We further find that, although the letter was admitted in error, such error was harmless. An evidentiary ruling in error by the trial court requires reversal only where the error played a substantial part in the verdict. *People v. Edwards*, 144 Ill. 2d 108, 170 (1991). As discussed in detail below, there was ample information supporting the trial court's findings of neglect and unfitness.

¶ 16 The next issue for our determination is whether the trial court erred in entering a finding of neglect. Ashlee argues that the trial court failed to adequately consider the evidence before it and that the evidence does not demonstrate that either she or J.Y.'s father failed to carry out their parental duties. Ashlee complains that the trial court ignored her explanation that the dog injured J.Y. and the negative results of the skeletal survey, MRI and CT head scan

in making a finding of neglect. She also objects to Petrak's opinion as insufficiently based.

¶ 17    A neglected minor includes one whose environment is injurious to his or her welfare. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). An injurious environment includes breach of a parent's duty to ensure a " 'safe and nurturing shelter' " for his or her children. *In re N.B.*, 191 Ill. 2d 338, 346 (2000) (quoting *In re M.K.*, 271 Ill. App. 3d 820, 826 (1995)). A neglect allegation must be proven by a preponderance of the evidence. *N.B.*, 191 Ill. 2d at 343. On appeal, a trial judge's ruling of neglect will not be reversed unless it is against the manifest weight of the evidence, that is, only if the opposite conclusion is clearly evident. *In re Arthur H.*, 212 Ill. 2d 441 (2004).

¶ 18    The record establishes that the State proved the neglect allegation by a preponderance of the evidence. The emergency room and a consulting doctor both indicated that the fracture of J.Y.'s leg "had a relatively high specificity for non-accidental trauma." A third doctor concluded the fracture resulted from the incident with the dog or from child abuse. Petrak concluded that the fracture was the result of inflicted trauma. The trial court specifically noted that it did not believe J.Y.'s injury was caused by the dog jumping on him but believed it resulted from some sort of abuse or neglect. The trial court also noted that both parents' "long history of DCFS[-]indicated findings for risk of harm to children" and the father's criminal history, including a conviction of endangering the life of a child, were sufficient to sustain a neglect finding. We find that its determination of neglect was not against the manifest weight of the evidence.

¶ 19    The third issue for our review is whether the trial court erred in finding J.Y.'s mother, Ashlee, unfit. Ashlee contends that the evidence failed to establish that she is an unfit parent.

¶ 20    A trial court may determine custody and placement of a child when it finds that the parent:

> "[is] unfit or unable *** to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents." 705 ILCS 405/2-27 (West 2010).

¶ 21    In ruling on unfitness, a trial court considers " 'the parent's past conduct in the then-existing circumstances .' " *In re Latifah P.*, 315 Ill. App. 3d 1122, 1128 (2000) (quoting *In re Adoption of Syck*, 138 Ill. 2d 255, 276 (1990)). On review, the trial court's determination will not be disturbed unless the findings of fact are against the manifest weight of the evidence. *In re J.P.*, 331 Ill. App. 3d 220 (2002). A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly evident or the determination is unreasonable, arbitrary or not based on evidence presented. *In re D.F.*, 201 Ill. 2d 476 (2002).

¶ 22    The dispositional order finding Ashlee unfit provides that the trial court's findings are based on the allegations in the petition. The allegations include that J.Y.'s injury could not have occurred without abuse or neglect by Ashlee and/or J.Y.'s father; the father has been found unfit previously without a finding of fitness; the father has a criminal history including endangering the life of a child; the father has a substance abuse problem; and both parents had been previously indicated by DCFS for risk of harm and inadequate supervision. The parents stipulated to the allegations. The past conduct of Ashlee and J.Y.'s father colors the

incident at issue and supports the conclusion that Ashlee is unfit to care for and protect J.Y. The trial court specified that it did not believe J.Y. was injured by the dog as Ashlee testified, leaving abuse or neglect as the source of J.Y.'s injury. We find that the evidence demonstrates Ashlee is unfit. The trial court's findings were not against the manifest weight of the evidence.

¶ 23     For the foregoing reasons, the circuit court of Peoria County is affirmed.

¶ 24     Affirmed.

¶ 25     JUSTICE HOLDRIDGE, specially concurring:

¶ 26     I agree with the majority's judgment and analysis. I write separately to point out some additional record evidence supporting the trial court's findings of neglect and unfitness which further confirms that the trial court's erroneous admission of Dr. Petrak's July 14, 2010, letter was harmless. Dr. Petrak's notes of her initial examination of J.Y. on June 1, 2010–the admissibility of which is not contested–indicated that the type of fracture that J.Y. suffered was high specificity for nonaccidental trauma, that the accident history provided by J.Y.'s parents was not consistent with J.Y.'s injury, and that J.Y's injury was highly suspicious for nonaccidental trauma. Moreover, a DCFS caseworker testified regarding the appellant's history of depression and other mental health issues. When this evidence is considered together with the stipulations and other evidence discussed in the majority opinion, it is clear that there was ample support in the record for the trial court's findings of neglect and unfitness, even without Dr. Petrak's July 14, 2010, letter.