2016 IL App (3d) 160010

Opinion filed June 9, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| *In re* K.I., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| a Minor | ) | Peoria County, Illinois, |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-16-0010 |
| | ) | Circuit No. 12-JA-61 |
| v. | ) | |
| | ) | |
| Torie I., | ) | Honorable |
| | ) | Albert L. Purham, Jr., |
| Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices Carter and McDade concurred in the judgment and opinion.

**OPINION**

¶ 1     Respondent, Torie I., appeals from the judgment of the circuit court finding her to be an

unfit parent of her minor child, K.I., under section 1(D)(m)(ii) of the Adoption Act (750 ILCS

50/1(D)(m)(ii) (West 2012)) and terminating her parental rights.  Respondent claims that the trial

court's finding that she failed to make reasonable progress toward the return home of her child

within the relevant nine-month period was against the manifest weight of the evidence.  She also

argues that the trial court abused its discretion in (1) admitting respondent's counseling records, (2) denying her motion for payment of expert witness fees, (3) refusing to find that the State violated discovery, (4) allowing the foster mother to testify at the best interest hearing, and (5) terminating her parental rights without finding that the State had proved termination was in K.I.'s best interest by a preponderance of the evidence. We affirm.

¶ 2                                   FACTS

¶ 3        In March 2012, the State filed a petition for adjudication of wardship of K.I., born on September 10, 2009. The State alleged that K.I. was neglected due to an injurious environment in that (1) respondent mother was previously indicated for substantial risk of physical injury and injurious environment by neglect and a safety plan had been implemented, (2) respondent had a substance abuse problem which included cannabis use and had sporadic drug drops, (3) respondent's completed drug drops tested positive for cannabis with the last one being on February 16, 2012, (4) mother had mental health problems and had not been consistent in taking medication or attending mental health services, and (5) mother had a history of domestic violence in relationships and had failed to complete a program.

¶ 4        On May 3, 2012, respondent appeared in court and stipulated to the allegations contained in the petition. On May 31, 2012, the trial court adjudicated the minor neglected and scheduled a dispositional hearing for a later date. The adjudication order listed the finding of neglect as "mother's substance abuse and mental health issues; offered many services and does not take advantage of same; continuous use [of] marijuana."

¶ 5        Prior to the dispositional hearing, Danielle Stanley of Children's Home Association of Illinois (Children's Home) submitted an integrated assessment report to the court. In the assessment, Stanley reported that respondent went to live with her maternal grandparents, Lynne

2

and Michael I., when she was 5 weeks old, and she was later adopted by them. Respondent had been diagnosed with bi-polar disorder and an explosive disorder. She had been referred to a counselor but did not continually utilize the service or take her medication. When Lynne and Michael I. learned respondent was pregnant, they kicked her out of their home. Before K.I. was born, they allowed her to return. After the birth of K.I., respondent's grandparents helped care for him.

¶ 6    In March of 2011, respondent was homeless and attempting to care for K.I. without housing. On March 28, 2011, a safety plan was implemented and K.I. was placed with Lynne and Michael I. After the court case was opened, Lynne and Michael I. said they were not willing or able to continue to care for K.I. The decision was made to recommend that the Department of Children and Family Services (DCFS) be awarded guardianship of the child. The report concluded that due to respondent's lack of participation in services, the prognosis for the family was "guarded."

¶ 7    Based on her assessment, Stanley made several recommendations, including that respondent (1) participate in and complete random drug screenings and complete drug and alcohol assessments, (2) participate in and complete individual counseling to address anger issues, (3) make and attend appointments with her medical provider to ensure that she has the mental health medication that she needs, and (4) seek and maintain housing for herself and K.I.

¶ 8    On June 14, 2012, the court entered its dispositional order removing custody and guardianship of K.I. from respondent and placing it with DCFS. The court ordered respondent to (1) cooperate with DCFS and its designees and sign all necessary release forms, (2) obtain a drug and alcohol assessment and follow treatment recommendations, (3) submit two random drug tests per month, (4) complete a psychological evaluation and follow all recommendations made

3

in that report, (5) participate in and complete parenting classes and domestic violence classes, and (6) successfully participate in mental health assessments and treatment recommendations and take all medications as prescribed.

¶ 9        The first permanency review hearing was held on December 6, 2012. DCFS filed a client service plan indicating that respondent had enrolled in outpatient substance abuse treatment. The plan also indicated that respondent was scheduled for a psychological evaluation on November 7, 2012. She had completed a mental health assessment and no diagnosis was made. The trial court found that respondent had made some recent efforts and had shown improvement but had not made reasonable efforts toward the return of K.I. The permanency goal was set as return home.

¶ 10       The June 6, 2013, permanency review hearing report referred to a psychological evaluation conducted by Dr. Rudolf G. Breitmeyer of the Antioch Group and stated "[p]lease see previous attachments submitted to the court for recommendations." The evaluation had been previously submitted to the court. It listed several recommendations, including that (1) respondent needs to be involved in individual therapy to help her gain insight into her own personal behavior, (2) individual therapy should also focus on abandonment and relationship issues, (3) as part of the individual therapy, parenting issues also need to be addressed, and (4) a reality therapy approach should be used in individual therapy sessions to enhance respondent's judgment and decision making skills.

¶ 11       Following the June 6, 2013, and December 5, 2013, permanency review hearings, the permanency goal was changed to substitute care pending termination of parental rights based on respondent's continued use of marijuana. The hearing report submitted for the August 7, 2014, permanency review hearing indicated that respondent had been in residential treatment for

4

substance abuse from December 20, 2013, to February 11, 2014. However, the report showed that since she was released from the treatment center in February, she had missed several random drug tests and that three drops tested positive for marijuana (C. 183).

¶ 12        On February 4, 2015, the State filed a petition to terminate respondent's parental rights. Count I of the petition alleged that pursuant to section 50/1(D)(m)(ii) of the Adoption Act respondent failed to make reasonable progress toward the return home of K.I. between December 1, 2013, and September 1, 2014. Respondent failed to appear, and the court entered a default judgment against her. Two weeks later, respondent appeared and requested that counsel be appointed to represent her. The court granted the State's motion to vacate and appointed counsel. Respondent later appeared represented by court-appointed counsel and denied count I of the termination petition.

¶ 13        The adjudication on the petition began on August 12, 2015. At that time, the State presented its list of exhibits and witnesses. Respondent objected to the State introducing any of the exhibits or witnesses on the list on the basis that the list had not been previously disclosed. Specifically, counsel for respondent objected to the State's intention to call Christopher Black, a Children's Home caseworker who had formerly been assigned to the case. The trial court denied respondent's motion and ruled that the State's witnesses could testify.

¶ 14        The State then moved to admit its exhibits. Respondent objected to the admission of several exhibits, including State's Exhibit No. #3, which contained her counseling records from Children's Home and her psychological evaluation completed by Dr. Breitmeyer. Respondent argued that State's Exhibit No. #3 contained hearsay and did not fall within the business records exception because the records were prepared in anticipation of court proceedings. The trial court denied respondent's motion and admitted the exhibit.

5

¶ 15    The State then called Black, who testified that he was respondent's caseworker from December 1, 2013, through May 2014. During that time, respondent was required to submit to random drug drops, undergo drug treatment, and seek counseling. Respondent participated in an inpatient drug treatment program at White Oaks Rehabilitation Center (White Oaks). Respondent was required to follow any recommendations from the program and continue to submit to random drug drop screenings. Black could not recall any specific recommendations from the White Oaks program but noted that respondent was only sporadic in her completion of drug drops and continued to have drug tests that tested positive for marijuana. He testified that the agency continued to pay for the random drug drops even after December of 2013 when the goal was changed to substitute care pending termination. As for counseling, Black testified that respondent met with a counselor after she was released from White Oaks but was eventually discharged due to "lack of engagement."

¶ 16    The adjudicatory hearing resumed two weeks later. Prior to calling the first witness, respondent moved for a continuance and for approval of funds for payment of expert witness fees. Counsel asked for a continuance to allow the county to pay for an expert witness from the Cook County Medical Examiner's office and a new date to begin respondent's case at the conclusion of the State's case. Respondent requested that the county pay for a forensic expert who could review the toxicology reports and testify to the significance of the drug drops. She stated that the expert could testify by phone for a fee of $1,000. The trial court denied respondent's motion, finding that the law did not entitle her to an expert witness paid for by the county in a civil proceeding. Further, the court found that the issues relating to the reliability of the drug tests were not relevant as to whether respondent made reasonable progress during the nine-month period set forth in the petition.

¶ 17        The State called its second witness, Michelle Roberts, a caseworker with Children's Home. She stated that she was respondent's caseworker from May of 2014 through September 1, 2014. During those four months, respondent was ordered to complete monthly visits, drug drops, outpatient treatment and counseling, and find stable housing and employment. Respondent was supposed to complete three random drug drops each month. During the time period Roberts was assigned to her case, respondent completed one drug drop. In addition, Roberts never received documentation from respondent that she had received outpatient services after she finished inpatient services at White Oaks and relapsed on marijuana.

¶ 18        Roberts also testified that respondent and K.I. had monthly visitation between May and September of 2014. Respondent missed the August visit. Roberts stated that during the visits, respondent did not ask about K.I.'s medical doctor's appointments or his educational development, nor did she bring any clothes or toys for K.I.

¶ 19        After Roberts' testimony, the State rested. Respondent did not present any evidence in support of her case.

¶ 20        In closing, the State referenced respondent's records from White Oaks that were contained in State's Exhibit No. #2. According to those records, respondent received inpatient treatment during the relevant period, but her treatment was not successful. Drug drop records further revealed that respondent tested positive for marijuana on December 20, 2013; December 29, 2013; January 8, 2014; January 15, 2014; January 18, 2014; and February 2, 2014. Respondent passed a drug test on January 22, 2014.

¶ 21        Next, the State presented records from Forte Laboratories which showed multiple missed drug tests and failed drug tests from February 2014 through August of 2014. Respondent missed tests on February 21, 2014; March 31, 2014; April 8, 17, and 29, 2014; May 6, 16, and 21, 2014;

7

June 3, 12 and 24, 2014; July 8 and 18, 2014; and August 1, 12, and 21, 2014. The lab also recorded failed drug tests on February 24 and 25, 2014; March 20, 2014; and July 23, 2014.

¶ 22    Counsel for respondent argued that the State failed to show that respondent used marijuana knowingly, that she used marijuana in excess, or that there was a relationship between the missed or positive drops and her parenting ability.

¶ 23    In its closing statement, the GAL argued that respondent was under court order to perform drug drops and refrain from substance use and that she failed to show reasonable progress in that area. The GAL also noted that respondent had been referred to a counselor but was eventually discharged for lack of engagement. She asked the court to find that all counts of the petition had been proven.

¶ 24    The trial court noted that respondent had only completed three out of seven counseling sessions during the relevant nine-month period and that, due to the limited number of sessions, the therapist was unable to complete a mental health assessment or a treatment plan. The court found that one of the primary issues of concern was respondent's continued use of cannabis. It noted the negative consequences that had resulted from respondent's drug use, such as requiring DCFS intervention, losing her son, being kicked out of her home, and dropping out of high school. The court then reviewed the numerous missed drug drops and failed drug tests, giving particular note to the positive results since she completed treatment at White Oaks in February 2014. It stated that substance abuse was one of the issues that originally brought the case to the court's attention and that cannabis affected not only respondent's parenting ability but her life. The trial court concluded that respondent was not close to having K.I. returned to her care and that the State had proven its case by clear and convincing evidence.

8

¶ 25    Prior to the best interest hearing, Melissa Shaw, a caseworker for Children's Home, submitted her report to the court. She also testified at the best interest hearing held on November 25, 2015. She stated that since she was assigned K.I.'s case in July of 2015, she had not made any referrals for respondent because the goal had been changed to substitute care pending termination. During supervised visitations between respondent and K.I., Shaw observed that K.I. did not initiate affection. She stated that K.I. does not have a strong bond with respondent and does not consider her as his mother.

¶ 26    Shaw reported that, by contrast, K.I. has a strong bond with his foster family. K.I. was placed with his foster family shortly after he turned three and has lived with them for three years. The foster home is in good repair and adequately sized. K.I.'s foster parents take him to his regularly scheduled medical exams and immediately address any medical issues. The foster family also provides for K.I.'s physical safety and welfare with food, shelter and clothing. K.I. is particularly affectionate with his foster mother, and he turns to her for comfort. He tells both his foster mother and father that he loves them. K.I. is also developmentally on target for his age. He attends kindergarten and is doing well. Shaw reported that K.I. enjoys school and was excited to attend on a daily basis.

¶ 27    Shaw admitted that K.I. is African American and lives with a Caucasian foster family. Shaw acknowledged that there is a preference to place children in foster homes with similar racial backgrounds but noted that it is a preference and not a requirement. K.I.'s foster parents have friends who are African American with whom K.I. interacts, and they have familiarized themselves with his cultural background. The foster family attends African American social and educational events within the community.

9

¶ 28    Shaw's report further indicated that K.I. expressed his wish to stay with his foster family. He has four foster siblings whom he loves. The foster family also supports K.I.'s continued relationship with his maternal grandfather and arranges visits with him every other weekend. K.I. has a strong bond with his maternal grandfather and the foster parents intend to continue that relationship if they adopt K.I.

¶ 29    At the conclusion of her report, Shaw recommended termination of respondent's parental rights, noting that K.I deserved to have permanency which respondent is unable to provide. The report concluded that the family loves K.I. "very much" and that placement in the foster home would be the least disruptive arrangement for K.I.

¶ 30    Respondent testified on her own behalf. She stated that she went to inpatient substance abuse treatment from December 20, 2013, through February 11, 2014. She successfully completed inpatient treatment, had a job, and had housing. She did not attend outpatient treatment after leaving White Oaks because she did not think she needed to go to outpatient treatment. She further testified that she failed to appear for her drug drop because Children's Home stopped paying for them sometime in 2014.

¶ 31    Respondent was not surprised by Shaw's testimony that K.I. does not ask for her because respondent only gets to see him once a month and he is only six years old. She testified that he does seem excited to see her during their visits, and when she tells him that she loves him, he says it back. She stated that she is unable to have more children and that she can provide a home for her son.

¶ 32    At the conclusion of the hearing, the GAL informed the court that the foster mother wished to make a statement. Respondent objected "to any narrative style of testimony." The court responded that she had a right to address the court and asked her to come forward. The

10

foster mother introduced herself, and the GAL asked a few general questions. The foster mother then gave a brief narrative statement to the court describing K.I.'s bond with her family and explaining their strong desire to adopt him. Counsel for respondent objected during her statement and her objection was overruled. The trial court then gave counsel the opportunity to question the foster mother, but she declined.

¶ 33 After hearing the evidence and considering the best interest report, the trial court found that it was in K.I.'s best interest to terminate respondent's parental rights. The court stated:

"As I look at each of these factors that I've talked about, I hereby terminate the parental rights of [respondent] and Harvey H. and fathers unknown. I find that this is in the minor's best interest. I appoint DCFS as guardian of the minor with the right to concept [sic] to adoption."

¶ 34                                          ANALYSIS

¶ 35                                              I

¶ 36 Respondent first argues that the trial court erred in finding she was unfit for failing to make reasonable progress toward the return of K.I. from December 1, 2013 to September 1, 2014.

¶ 37 Parental rights may be involuntarily terminated where (1) the State proves, by clear and convincing evidence, that a parent is unfit pursuant to grounds set forth section 1(D) of the Adoption Act, and (2) the trial court finds that termination is in the child's best interests. 750 ILCS 50/1(D) (West 2012); *In re Donald A.G.,* 221 Ill. 2d 234, 244 (2006). The State is not required to prove every ground it has alleged for finding a parent unfit. *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005). "A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." *Id*.

11

¶ 38     Pursuant to the Adoption Act, a parent is unfit if he or she failed "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected or abused minor."   750 ILCS 50/1(D)(m)(ii) (West 2014). Reasonable progress under section 1(D)(m)(ii) requires "demonstrable movement toward the goal of reunification." *In re C.N.*, 196 Ill. 2d 181, 211 (2001).  On review, the trial court's fitness determination will not be disturbed unless it is against the manifest weight of the evidence. *Gwynne P.,* 215 Ill. 2d at 354.  A court's decision is against the manifest weight of the evidence where the opposite conclusion is clearly apparent. *Id*.

¶ 39     Here, the State alleged respondent was an unfit parent because she failed to make reasonable progress toward K.I.'s return during the nine-month period following the neglect adjudication from December 1, 2013, through September 1, 2014.  At the fitness hearing, evidence showed that K.I. was originally removed from respondent's care because she failed to take advantage of the counseling services that had been provided and continued to use marijuana. Christopher Black, a caseworker for Children's Home testified that from December 2013 to May 2014, respondent was only sporadic in her completion of drug testing.   He further testified that respondent met with a counselor but was eventually discharged due to lack of engagement. Michelle Roberts, respondent's caseworker between May 2014 and September 2014, reported that respondent only completed one drug drop during that time.  Also, following her release from the inpatient program at White Oaks, respondent failed to enroll in any outpatient program.  As for her random drug testing, the exhibits showed that respondent missed numerous drug drops during the relevant nine-month period, and of the drug drops she completed, all but one tested positive for marijuana.

12

¶ 40 The evidence presented shows respondent failed to comply with services or address issues related to the reasons why K.I. was removed from her care. During the relevant time period, respondent continued to use marijuana on a frequent basis, an act that initially lead to DCFS involvement and the loss of her son. We find the evidence was sufficient to show respondent failed to make reasonable progress toward K.I.'s return from December 1, 2013, to September 1, 2014.

¶ 41 Respondent argues that the finding of unfitness based on her failure to attend counseling and her use of marijuana was erroneous because the court never ordered counseling and her marijuana use was insignificant. We disagree with both claims.

¶ 42 First, individual counseling was court ordered. The original dispositional order of June 14, 2012, included a requirement that respondent submit to a psychological examination arranged by DCFS or its designees and "follow all recommendations made." A psychological evaluation was conducted and referred to in the permanency review hearing report submitted to the trial court on June 6, 2013. Specifically, the psychological evaluation recommends individual counseling for substance abuse, mental health and parenting issues. Thus, whether the trial court explicitly ordered individual counseling is irrelevant. Respondent was ordered to follow the recommendations of the psychological evaluation which instructed respondent to seek individual counseling as a requirement to address the issues that resulted in K.I.'s removal and improve her parenting skills.

¶ 43 Second, respondent's marijuana use is not an irrelevant or insignificant factor in determining fitness in this case. The evidence demonstrates that respondent's marijuana use was a primary issue that led to the removal of her child. Respondent cites, *In re J.J.*, 201 Ill. 2d 236 (2002), in support of her argument that substance abuse alone cannot be used as a basis for

termination. However, that case is inapplicable here. *In re J.J.* involved a claim of habitual drunkenness which is not the basis for the petition to terminate in this case. Moreover, the reviewing court in *In re J.J.* found insufficient evidence to support a finding of habitual drunkenness and a failure by the trial court to specify the time period. *In re J.J.*, 201 Ill. 2d at 251-52. Here, the time period was clearly outlined, and the evidence showed that during that relevant period respondent failed to participate in counseling as recommended and failed multiple drug tests, both of which were relevant to the initial removal of K.I. Thus, the trial court's finding of unfitness for failure to make reasonable progress toward the return of K.I. was not against the manifest weight of the evidence.

¶ 44                                    II

¶ 45        Respondent claims that the trial court erred in admitting her counseling records from Children's Home (State's Exhibit No. #3) without requiring a witness to lay the proper foundation.

¶ 46        Section 2.1 of the Adoption Act provides that the Adoption Act "shall be construed in concert with the Juvenile Court Act of 1987 [(Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2012)]." 750 ILCS 50/2.1 (West 2012); *In re Yasmine P.*, 328 Ill. App. 3d 1005, 1009 (2002). A fitness hearing under the Adoption Act is a continuation of the abuse, neglect or dependency proceedings under the Juvenile Court Act. *In re Precious W.*, 333 Ill. App. 3d 893, 901 (2002). Thus, the hearsay exception in section 2-18(4)(a) of the Juvenile Court Act is applicable in a fitness hearing brought under the Adoption Act. *In re Yasmine P.*, 328 Ill. App. 3d at 1009; see also *In re Precious W.*, 333 Ill. App. 3d at 901 (appellate court specifically rejected respondent's argument that health care records were inadmissible in a fitness hearing brought under the Adoption Act.)

¶ 47        Section 2-18(4)(a) of the Juvenile Court Act provides that that certified records of hospitals and public or private agencies concerning a condition, act, occurrence or event relating to a minor in an abuse, neglect or dependency proceeding shall be admissible as proof of the condition, act, occurrence or event. 705 ILCS 405/2-18(4)(a) (West 2012). This provision allows such records to be admitted at trial without the additional foundational requirements of the business records exception to the hearsay rule. See Ill. S. Ct. R. 236 (eff. Aug. 1, 1992).

¶ 48        In this case, the trial court found the records were not specifically made for court purposes in that they described what occurred during counseling sessions and mental health sessions concerning a condition relating to the adjudication petition. The records were authorized by Children's Home and its agents based on recommendations in the neglect proceeding. Thus, the respondent's counseling records were properly admitted in accordance with section 2-18(4)(a) of the Juvenile Court Act. See *In re Precious W.*, 333 Ill. App. 3d at 901.

¶ 49                                            III

¶ 50        Respondent also argues that it was an abuse of discretion for the trial court to deny her motion for expert witness fees.

¶ 51        In both capital and noncapital criminal cases, the trial court may order payment for expert witnesses on behalf of indigent defendants. *In re E.S.*, 246 Ill. App. 3d 330, 335 (1993). However, proceedings under the Juvenile Court Act are civil in nature, and the general rules of civil practice apply. *Id.* Unlike section 113-3(d) of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-3(d) (West 2012)), there is no provision in the Code of Civil Practice that allows for the payment of expert witnesses on behalf of indigent defendants. Whether to pay for an expert witness is a decision that lies within the trial court's sound discretion. *Id.* at 336.

15

¶ 52    In this case, respondent has cited no authority for her proposition that juvenile court matters are similar to criminal matters and allow the payment of expert witnesses for defendants who are unable to pay. We therefore find respondent's argument unpersuasive. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (requiring citation to authority); see also *Charter Bank v. Eckert*, 223 Ill. App. 3d 918, 928-29 (1992) (failure to cite relevant authority in support of a bare argument will not merit consideration of the issue on appeal).

¶ 53    Even if authority had been provided, respondent failed to demonstrate how she was prejudiced by the denial of her motion for expert witness fees. At the hearing on August 26, 2015, respondent argued that she needed the expert to show the significance of the drug tests, how the tests were performed, the qualifications of the testers, and the reliability of the tests. The question before the court, however, was whether respondent made reasonable progress during the nine-month period. The chain of evidence or the reliability of the drug tests was not at issue. A forensic testing expert could offer no opinion regarding respondent's missing drug drops or her failure to participate in counseling. Thus, the expert respondent requested would have had no bearing on the outcome of the case.

¶ 54                                    IV

¶ 55    Respondent contends that the trial court abused its discretion in denying her oral motion to exclude evidence because the witnesses and exhibits had not been disclosed in pretrial discovery.

¶ 56    It is well settled that a party may not request to proceed in one manner at trial and then contend on appeal that the requested course of action was in error. *People v. Lucas*, 231 Ill. 2d 169, 174 (2008). Excluding evidence not disclosed pursuant to discovery should be resorted to only when a recess or continuance would be ineffective. *People v. Nelson*, 92 Ill. App. 3d 35, 45

16

(1980).  Failure to seek a continuance waives a claim of error based on surprise.  *People v. Visgar*, 120 Ill. App. 3d 584, 589 (1983).  A trial court's decision whether to allow evidence or whether to impose a discovery sanction is reviewed for an abuse of discretion.  *In re D.T.*, 212 Ill. 2d 347, 356-57 (2004).  Any error in failing to compel discovery is harmless where it does not affect the outcome in the trial court.  *Hadley v. Snyder*, 335 Ill. App. 3d 347, 351 (2002).

¶ 57    At the beginning of the adjudicatory hearing on the petition, the trial court requested the exhibit list, and respondent objected, arguing it should have been produced at the pretrial hearing.  The State responded that it had been disclosed.  Counsel for respondent then admitted that she had the records and stated that she was only objecting to the witnesses that had not been disclosed.  Thus, respondent affirmatively waived any claim of a discovery violation as to the exhibits by acknowledging that she was only complaining about the witnesses.  See *Lucas*, 231 Ill. 2d at 174.

¶ 58    Her argument that the trial court abused its discretion in allowing the witnesses to testify is also unavailing.  The trial court confirmed that Christopher Black was going to testify about the period during which he was respondent's caseworker from December 1, 2013, to May 2014.  Respondent's counsel then stated that she was not surprised that Black would be testifying but would have preferred a pretrial witness list from the State.  However, respondent did not request a remedy for failing to disclose that witness or the other witnesses.  Thus, she waived any claim of error based on surprise.  See *Hadley*, 335 Ill. App. 3d at 351.

¶ 59    Even if the witnesses had been excluded, the remaining evidence was sufficient to support the trial court's finding of a lack of progress.  The records and reports showed respondent failed to participate in counseling, missed numerous drug drops, failed most of the

drug tests that she completed and continued to use marijuana on a frequent basis. Any error in allowing the witnesses' testimony was harmless.

¶ 60                                                    V

¶ 61        Respondent next complains that the trial court erred in allowing K.I.'s foster mother to give a statement at the best interest hearing because the petition was filed under the Adoption Act, which does not allow for foster parents to be heard in court proceedings.

¶ 62        Respondent acknowledges that the Juvenile Court Act affords a foster parent a right to be heard by the court (705 ILCS 405/1-5(2)(a) (West 2012)) but ignores section 2.1 of the Adoption Act which provides that the Adoption Act shall be construed in accordance with the Juvenile Court Act (750 ILCS 50/2.1 (West 2012)). Thus, contrary to respondent's claim, the trial court did not abuse its discretion in allowing the foster mother to describe K.I.'s general well-being or explain his attachment to the foster family.

¶ 63                                                   VI

¶ 64        Last, respondent argues that the trial court's finding that it was in K.I.'s best interest to terminate her parental rights was against the manifest weight of the evidence. Specifically, she maintains that the court erred in failing to make an oral or written finding that the State proved its case by a preponderance of the evidence.

¶ 65        A trial court's ruling that a parent is unfit does not automatically mean that it is in the child's best interest to terminate parental rights. *In re B.B.,* 386 Ill. App. 3d 686, 698 (2008). Still, during the best interest hearing, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest to live in a stable, permanent, loving home." *In re S.D.,* 2011 IL App (3d) 110184, ¶ 34. In determining a child's best interest, the trial court is required to consider the following statutory factors of the Juvenile Court Act in light of the

18

child's age and developmental needs: (1) the child's physical safety and welfare, including food, shelter, health, and clothing; (2) the development of the child's identity; (3) the child's familial, cultural, and religious background and ties; (4) the child's sense of attachment, including love, sense of security, sense of familiarity, continuity of affection of the child, and least disruptive placement for the child; (5) the child's wishes and goals; (6) the child's community ties, including church, school, and friends; (7) the child's need for permanence; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05) (West 2012). The court may also consider the nature and length of the relationship that the child has with his or her present caregiver and the effect a change in placement would have on the child's emotional and psychological well-being. *In re S.K.B.*, 2015 IL App (1st) 151249, ¶ 48. The State must show by a preponderance of the evidence that termination of parental rights is in the child's best interest. *In re Curtis W.*, 2015 IL App (1st) 143860, ¶ 53. We will not disturb a trial court's determination that it is in the child's best interest to terminate parental rights unless the ruling is against the manifest weight of the evidence. *Id.* ¶ 54.

¶ 66        At the conclusion of the best interest hearing, the trial court discussed the factors on the record before stating that it was in K.I.'s best interest to terminate respondent's parental rights. The court also entered a written order finding that it was in the best interest of the minor that respondent's rights be terminated. Thereafter, the trial court signed a written order entitled "Dispositional Order Terminating Parental Rights," which stated that following review of reports, testimony and argument, the court found that it was in the best interest of K.I. to terminate the parental rights of respondent. Thus, the record demonstrated that the court applied

19

the best interest factors present in section 1-3(4.05) of the Juvenile Court Act.  No necessary finding was missing.

¶ 67        Respondent appears to argue that there is a statutory requirement that the court use the words "preponderance of the evidence" when making a best interest finding.  However, she has cited no authority to support that argument.  An appellant must cite authority in support of her argument, and failure to do so results in waiver on appeal.  See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (requiring citation to authority); *Eckert*, 223 Ill. App. 3d at 928-29.  Moreover, there is no indication in the record that the trial court did not know or apply the proper burden of proof in determining the best interest of K.I.

¶ 68        We further conclude that the trial court's finding that the State had proven by a preponderance of the evidence that it was in K.I.'s best interests to terminate respondent's parental rights was not against the manifest weight of the evidence. As the trial court noted, there was significant evidence that K.I. had a strong bond with his foster family.  He was close to his foster mother.  He turned to her for comfort, showed spontaneous physical affection toward her, and said that he loved her.  K.I. also developed a close relationship with his four foster siblings and was happily integrated with his foster family.  The caseworker testified that the foster family took K.I. to his doctor's appointments, provided food and clothing, and supported K.I. with a loving home.  Further, K.I. was six years old at the time of the hearing and had been living with his foster family for three years.  Thus, it is likely a change in placement would negatively impact his emotional and psychological well-being.  Although respondent largely focuses on her own progress on services, the child's best interest is paramount during the best interest hearing. See *In re B.B.,* 386 Ill. App. 3d at 697-98.  We cannot say that the trial court's ruling that it was

20

in K.I.'s best interest to terminate respondent's parental rights was against the manifest weight of the evidence.

¶ 69                          CONCLUSION

¶ 70          The judgment of the circuit court of Peoria County is affirmed.

¶ 71          Affirmed.