**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210456-U

Order filed February 14, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* P.J.-M and R.M., | ) | Appeal from the Circuit Court |
| | ) | of the Tenth Judicial Circuit, |
| Minors | ) | Peoria County, Illinois. |
| | ) | |
| (The People of the State of Illinois, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-21-0456 & 3-21-0457 |
| | ) | Circuit No. 18-JA-96 & 18-JA-97 |
| v. | ) | |
| | ) | |
| Angela J., | ) | |
| | ) | The Honorable |
| Respondent-Appellant). | ) | Timothy Cusack, |
| | ) | Judge, presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice O'Brien and Justice Lytton concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  Orders finding respondent unfit to care for the minors and subsequently terminating her parental rights were not against the manifest weight of the evidence.

¶ 2     The circuit court found respondent, Angela J., to be an unfit parent to P.J.-M and R.M. It subsequently terminated her parental rights. On appeal, respondent argues that the court's finding

of unfitness and termination order were against the manifest weight of the evidence. For the reasons that follow, we affirm the circuit court's finding of unfitness and its termination order.

¶ 3                                                    BACKGROUND

¶ 4        On March 8, 2018, the State filed petitions for adjudication of neglect regarding the minors P.J.-M (born June 15, 2013) and R.M. (born May 26, 2005). The petitions alleged, among other things, that on January 30, 2018, police officers executed a search warrant for sale of crack cocaine at the minors' home and found respondent attempting to flush cocaine down the toilet, two grams of cocaine in 13 individual baggies, approximately 1.7 grams of cannabis, a loaded .45 caliber handgun in a purse in the bedroom, and 9mm ammunition in a Victoria's Secret bag. The petitions also alleged (1) that respondent had a criminal history, which included pending charges for possession of controlled substances and attempt at obstructing justice; (2) that respondent was in a relationship with person involved in drug sales and who had been held unfit in other, unrelated cases; and (3) that police responded to the minors' home on May 29, 2017, to investigate a report of shot fired and to search for respondent's alleged boyfriend. The circuit court entered adjudicatory orders finding the petitions proven on June 8, 2018.

¶ 5        Although the orders found the minors neglected and declared them wards of the State, respondent and the minors' father were found fit over the objection of the State and the guardian *ad litem*, and respondent was named the minors' guardian. Respondent was further ordered to (1) execute all authorizations for releases of information requested by DCFS or designee; (2) cooperate fully and completely with DCFS or designee; (3) obtain a drug and alcohol assessment and follow recommendations; (4) perform random drug drops two times per month; (5) participate in and successfully complete counseling; (6) participate in and successfully complete a parenting course or classes; (7) obtain and maintain stable housing conducive to the safe and

healthy rearing of the minors; (8) provide any change in address, phone number, or change in members of household within three days; and (9) provide to assigned caseworker information for any person with whom DCFS or designee had reason to believe a relationship existed or had developed affecting the minors.

¶ 6 On September 21, 2018, the circuit court entered a new order appointing DCFS guardian after respondent failed to disclose incidents of domestic violence and driving with the minors in the car on a suspended license. The minors were placed in the care of their maternal grandparents, Solomon and Sultan H. On March 26, 2021, after several permanency reviews and orders, the court changed the permanency goal to "substitute care pending court decision on parental rights.

¶ 7 On April 23, 2021, the State filed petitions to terminate respondent's parental rights relative to the minors, alleging that she failed to make reasonable progress toward the return of the minors during the nine-month period following adjudication date of May 18, 2020, to February 18, 2021. Respondent filed an answer denying the allegations and the State filed supplemental petitions on July 26, 2021. In each supplemental petition, the State alleged respondent failed to make reasonable progress during a different nine-month period running from October 2, 2020 to July 2, 2021.

¶ 8 The hearing on the supplemental petitions commenced on September 10, 2021. Brianna Colvin testified she had been the caseworker in this matter since September 13, 2020. She stated that during the time period of October 2, 2020, and July 2, 2021, respondent did not complete any substance abuse treatment, did not complete "drug drops" consistently, and tested positive for THC (consumption of cannabis) on October 28, 2020, and cocaine on February 11, 2021. Colvin also admitted that, during the designated period, respondent was not required to perform

3

any services because they had been completed except for on-going "drug drops." After the goal changed to substitute care pending decision on parental rights, the agency no longer paid for services, so there were no further drug drops requested. Colvin agreed that orders to comply with services remained in place, but services were not paid for by the agency.

¶ 9 Respondent testified on her own behalf. She did not believe her last drug drop was in February 2021 and recalled that she made additional drops after February. She stated that she had not been asked to do a drug assessment because she had been assessed three times and, that she was not offered drug treatment nor requested to make any additional drug drops. Respondent testified that during the relevant period the agency did not ask her to do anything because she had completed all ordered services. She explained that "[t]hey didn't have proof" so she had to get "proof from the place from the department" because "she" (possibly Colvin) did not have all the information. Respondent testified that during the relevant period she was able to visit the minors once a week, but her visits were reduced to one hour without prior notice. She explained that she was offered overnight and unsupervised visits if she had completed her services, but that never happened because caseworkers were often changed or reassigned. She, however, still attended the one-hour visits per week and abided by what her father said because he was the supervisor during her visits. On cross-examination, respondent was not sure of her last positive drug drop but noted a caseworker had said it was February 11, 2021, and that she tested positive for cocaine. She offered no evidence of any drug drops after February 11, 2021.

¶ 10 Respondent recalled Colvin as a witness, who stated a family team meeting was held and they discussed decreasing visitation and drug drops with respondent. Colvin testified that she did not tell respondent she had to complete drug drops out of her own pocket or on her own. Colvin also affirmed (on examination by the court) that a March 22, 2021, permanency addendum

4

accurately reported respondent failed to appear for six out of seven requested drops. The referenced addendum showed respondent "failed to appear to every drop requested of her since [January 20, 2021] aside from one that she completed on" February 26, 2021. When recalled as a witness, respondent denied failing to appear for requested drops.

¶ 11   The State argued respondent failed to make reasonable progress during the relevant period, testing positive for cocaine in February 2021 and for THC in October 2020 and failing to consistently complete drug drops. Respondent noted that, during the relevant time period, she had already completed her substantive services and had maintained regular visits despite the reduced visitation hours. She contended that there was no evidence presented as to non-cooperation, missed visits, or inconsistent ("poor") visits. Respondent also contended that terminating parental rights on one dirty drop during the relevant period was not sufficient. She argued that the evidence did not rise to the level of failing to make reasonable progress during the relevant period. The guardian *ad litem* noted that at no time during the course of the cases was the agency in a position to return the minors to respondent's care, contending that despite having completed services prior to the reporting period, there was at least one positive test result for cocaine with multiple missed drug drops. The guardian *ad litem* argued respondent should be found unfit given her history of substance abuse, which impacted the safety and security of the minors and their ability to return to her care.

¶ 12   Following argument, the circuit court found the State had met its burden of proving respondent unfit, stating that "while she completed everything else, [respondent] hadn't taken control of her drug habit and her drug issues." The court explained: "She misses drops. She didn't take an assessment. She fails to appear for drops on a consistent basis during this period of time." The court stated the conditions requiring removal had been persistent during the three-

year lifetime of the case but "certainly during this nine-month period of time there was not reasonable progress made regarding that issue."

¶ 13        The circuit court then immediately proceeded to a best interest hearing. The court first considered the single best interest report DCFS filed on July 8, 2021. The report indicated that the minors had been placed in foster care with their maternal grandparents for over 1,018 days. The minors' basic needs of food, shelter, clothing, and health were met by their grandparents. The home had been observed during monitoring visits by a licensing worker every six months; no safety concerns have been raised and the home "has met all DCFS licensing standards for a relative foster home. Both P.J.-M and R.M were growing, and each was "meeting her developmental milestones." The report noted that the "grandparents [were] willing and committed to providing permanency for" P.J.-M. It also noted that R.M shared her future goals with the caseworker: She was looking for summer employment, wanted to start working to purchase a car after getting her driver's license, and was "really focused on establishing her independence." The minors have the same biological father, against whom the State also had pending petitions for termination of parental rights. The report stated that, when the case was opened, respondent was in an on-going relationship with "a known sex offender" whom she allowed to stay in the home with the minors. Her boyfriend's offense involved a minor under the age of twelve. The report recommended that respondent's parental rights be terminated and determined that there were no concerns with the minors' current placement. Colvin requested that the court correct the report, explaining that "it says [respondent] has not completed a walk-in substance abuse assessment, it should say during this reporting period."

¶ 14        The State's sole witness was Colvin, who testified that the minors have been in their current placement for "exactly 1,079 days" and that they have developed "strong community

6

ties" there. She also stated that "the current caregivers [were] willing to be permanent adoptive placements for [the] minors." Respondent called Solomon H., respondent's father, who stated that he was willing to adopt the minors. He testified that he supervised all of respondent's visits with the minors. She attended all of the scheduled visits and interacted appropriately with the minors. Both minors identify respondent as their mother, calling her mom. Solomon H. stated that R.M., who was sixteen at the time, had a phone and "probably" spoke regularly with respondent but he did not actually know if she did.

¶ 15    The State recommended that the circuit court terminate respondent's parental rights, change the permanency goal to "adoption," maintain the minors as "wards of the Court," and keep DCFS as guardian. Respondent contended that both minors know and refer to her as their mother. She noted that she has attended visits "every week without fail." She argued that termination was not in the best interest of the minors. The guardian *ad litem* noted there was a mother-daughter relationship between respondent and each minor, but stated that, throughout the case, respondent had failed to "address the issues [required] to have her children returned to her care." She contended the minors deserve "safety and stability," which their grandparents have been providing for "[a] significant number of days." She did not believe return to respondent's care would "be safe or appropriate." The guardian *ad litem* argued the termination of respondent's parental rights was in the minors' best interest.

¶ 16    The circuit court ruled that termination was in the best interest of the minors. First, the court found that the grandparents have (1) been providing for the minors' physical safety and welfare; (2) helped the minors' development of their identity; (3) encouraged them in establishing family, cultural, and religious ties; (4) created a sense of attachment and security with the minors; and (5) provided continuity of affection for the minors. The court concluded

that the placement with the grandparents was "the least disruptive placement alternative for the children." The court then noted that respondent will be able to maintain a presence in minors' lives because "the grandparents are [a] stable factor in this case," which has lasted for three years. In relevant part, the court stated:

> "I don't believe, as I sit here today, based upon the testimony, and based upon all information that has been received by the Court that [respondent] has taken care of her drug problem at this point in time. That is what caused this case to come back in. I don't feel secure that in allowing the children to go back to her and not terminating her rights in any respect would be appropriate at this time, and it's not in the children's best interest."

The court concluded that the minors' placement with and ultimate adoption by their grandparents was what they needed.

¶ 17    The circuit court entered its order on September 16, 2021. Respondent now appeals this order.

¶ 18                                                  ANALYSIS

¶ 19    Parental rights may be involuntarily terminated where (1) the State proves, by clear and convincing evidence, that a parent is unfit pursuant to grounds set forth in Section 1(D) of the Adoption Act, and (2) the circuit court finds that termination is in the child's best interests. 750 ILCS 50/1(D) (West 2019); *In re Donald A.G.*, 221 Ill.2d 234, 244 (2006). The State is not required to prove every ground it has alleged for finding a parent unfit. *In re K.I.*, 2016 IL App (3d) 160010, ¶ 37 (citing *In re Gwynne P.*, 215 Ill.2d 340, 349 (2005)). "A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence." *Id.*

8

¶ 20    Pursuant to the Adoption Act, a parent is unfit if she failed "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected or abused minor." 750 ILCS 50/1(D)(m)(ii) (West 2019). Reasonable progress under section 1(D)(m)(ii) requires "demonstrable movement toward the goal of reunification." *In re C.N.*, 196 Ill.2d 181, 211 (2001). On review, the circuit court's fitness determination will not be disturbed unless it is against the manifest weight of the evidence. *In re K.I.*, 2016 IL App (3d) 160010, ¶ 38 (citing *In re Gwynne P.*, 215 Ill.2d at 354). A court's decision is against the manifest weight of the evidence where the opposite conclusion is clearly apparent. *Id.*

¶ 21    The manifest weight of the evidence shows that respondent failed to make reasonable progress toward correcting her drug abuses during the relevant nine-period spanning from of October 2, 2020, and July 2, 2021. Respondent tested positive for cannabis on October 28, 2020, and cocaine on February 11, 2021. She also failed to appear for six requested drug drops between January 20, 2021, and February 26, 2021.

¶ 22    On appeal, respondent argues that she made reasonable progress because she made significant progress in addressing her court-ordered services. She notes that there is no dispute that she completed all services requested except for the required continued compliance with drug drops. She contends that the conditions requiring the minors' removal were for incidents of unreported domestic violence and driving on a suspended license. Respondent argues that she had made measurable or demonstrable movement toward reunification with the minors because "there was no indication that domestic violence persisted or that [she] continued to use poor judgment in her driving habits."

¶ 23    We disagree. The order adjudicating the minors neglected and the conditions supporting it predated the allegations for DCFS's appointment as guardian. The State filed the initial petitions because respondent had pending charges for possession of controlled substances and was found attempting to flush cocaine down her toilet. The court found these petitions proven and ordered respondent to, *inter alia*, perform random drug drops two times per month. We note that respondent has completed all court ordered services during the lifespan of this case, except regularly and successfully complying with ongoing drug testing. It was concealment of domestic violence and driving the minors while her license was suspended that brought respondent back into court, resulting in removal of the minors and their current placement with their grandparents. However, the conditions initiating this case were created by and remained intertwined with respondent's use and trade of controlled substances. Respondent's failure to regularly perform drug drops hindered her ability to resolve this impediment to reunification. Therefore, the finding of unfitness is supported by the manifest weight of the evidence.

¶ 24    On a petition for termination of parental rights, once a finding of unfitness has been made, all considerations must yield to the best interest of the child. *In re O.S.*, 364 Ill. App. 3d 628, 633 (3rd Dist. 2006). At this stage of the proceedings, the State must prove by a preponderance of the evidence that termination of parental rights is in the child's best interest. *In re D.T.*, 212 Ill.2d 347 (2004). The trial court's decision requires consideration of statutory factors, including, inter alia: (1) the physical safety and welfare of the child, including food, shelter, clothing, and health; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments; (5) the child's wishes and long-term goals; (6) the child's community ties, including church, school, and friends; (7) the child's need for permanence; (8) the uniqueness of every

10

family and child; (9) the risks attendant to entering and being in substitute care; and (10) the preference of the persons available to care for the child. 705 ILCS 405/1–3(4.05) (West 2021). The trial court's task requires the court to balance these factors, weighing them at the first instance, and places the court "in a better position to see the witnesses and judge their credibility." *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71 (internal citations and quotations marks omitted). Thus, on review, we accord the trial court's determination in a termination proceeding great deference and will not reverse it unless it is contrary to the manifest weight of the evidence. *In re O.S.*, 364 Ill. App. 3d at 633.

¶ 25        The relevant factors in this case show that the trial court's termination order was not against the manifest weight of the evidence. First, the current placement with their grandparents meets the minors' basic needs of food, shelter, clothing, health, and physical safety. The home met all DCFS licensing standards for a relative foster home at each semi-annual monitoring during the minors' placement there. Both minors were growing, and each was "meeting her developmental milestones." By contrast, respondent's home placed the minors with a drug user and in close contact with "a known sex offender."

¶ 26        Second, the current placement satisfies the minors' need for permanence. Colvin testified that they had been placed with their grandparents for exactly 1,079 days at the time of the hearing. She noted that the grandparents were willing and committed to providing permanency for P.J.-M. Solomon H. affirmed his intent to adopt both minors. During the placement, R.M has been able to develop her identity by focusing her future goals which included looking for summer employment, getting her driver's license, and purchasing a car. Although her goals also included "establishing her independence," the court found that her grandparents were a stabilizing force, within which, we note, she was able to formulate positive goals.

11

¶ 27    Finally, the minors' placement with their grandparents would encourage them in establishing and maintaining family, cultural, and religious ties. On appeal, respondent argues that this factor is neutral because the minors' grandparents are her parents and would foster the same ties as she would. Our goal in evaluating this factor, however, is not centered solely on the nature of the ties established and maintained, but also on the minors' ability to safely and positively foster those ties. Solomon H. has supervised all of respondent's visits with the minors with no indication of interfering with their interaction. Under his guidance, respondent has attended all of the scheduled visits and interacted appropriately with the minors. Both minors continue to identify her as their mother, with R.M. "probably" speaking regularly with respondent over the phone. The court concluded, and we agree, that respondent will be able to maintain a presence in minors' lives under the current placement while they continue to benefit from their grandparents' stabilizing guidance.

¶ 28                                    CONCLUSION

¶ 29    The judgment of the circuit court of Peoria County is affirmed.

¶ 30    Affirmed.