NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220194-U

NO. 4-22-0194

IN THE APPELLATE COURT

FILED
August 5, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* T.L., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | No. 21JA377 |
| v. | ) | |
| Willquil F., | ) | Honorable |
| Respondent-Appellant). | ) | Mary Linn Green, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Presiding Justice Knecht and Justice Turner concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed
the trial court's judgment terminating respondent's parental rights, as no
meritorious issues could be raised on appeal.

¶ 2     On February 11, 2022, the trial court entered an order terminating the parental rights

of respondent, Willquil F., to her daughter, T.L. (born October 3, 2021). Respondent appealed.

Appellate counsel now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967),

and *In re Alexa J.*, 345 Ill. App. 3d 985 (2003), on the basis that he cannot raise any potentially

meritorious argument on appeal. Counsel's notice of filing and proof of service indicate he sent a

copy of his motion and brief to respondent by mail. Respondent has not filed a response. After

reviewing the record and counsel's brief, we grant counsel's motion to withdraw and affirm the

judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4            On October 6, 2021, the State filed a petition for adjudication of wardship regarding T.L. The petition alleged T.L. was neglected by her parents, respondent and Tashawnbe L., in that she was in an environment injurious to her health and well-being. (Tashawnbe L.'s parental rights were terminated at the same time as respondent's, but he is not a party to this appeal.) The petition for adjudication of wardship alleged respondent had given birth to other children who were not presently in her care. That is, her parental rights to three other children had already been terminated in June 2021. The petition also alleged respondent tested positive for cocaine upon T.L.'s delivery. The trial court entered an order placing T.L. in the temporary custody of the Department of Children and Family Services (DCFS). T.L. was placed in the care of her godmother. DCFS rotated this case to Children's Home and Aid for placement services.

¶ 5            On November 29, 2021, the State filed an amended adjudication petition, adding a third count, which alleged T.L. was born with cocaine, marijuana, and nicotine or a metabolite of such substances in her urine, blood, or meconium. The State also requested the expedited termination of respondent's parental rights, alleging she was an unfit parent on the following grounds: (1) she failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2020)) (count I); (2) she had a habitual addiction to drugs for at least one year immediately prior to the commencement of the unfitness proceeding (750 ILCS 50/1(D)(k) (West 2020)) (count II); and (3) she failed to make reasonable progress toward the return of T.L.'s siblings during the nine-month period of either October 1, 2019, to July 1, 2019, and/or May 1, 2020, to February 1, 2021 (750 ILCS 50/1(D)(m)(ii) (West 2020)) (count III). In a December 15, 2021, second amended petition, the State removed count III.

¶ 6 On January 27, 2022, the trial court conducted a combined adjudicatory and fitness hearing on the State's petition. Respondent mother failed to appear.

¶ 7 The State called Blake Box, a DCFS investigator, who testified she responded to the hospital upon notification that T.L. had tested positive for cannabis and cocaine upon birth. She also testified T.L. was at "substantial risk of physical injury, environment injurious to health and welfare by neglect because [respondent] had other minors that were in foster care who had not returned back to her care." Box testified the siblings had been removed from respondent's care in 2018 upon a report of physical abuse by respondent toward her then three-year-old son. Respondent was caught on camera hitting and kicking the boy. She was arrested for domestic battery. Box testified respondent had also been the subject of other indicated reports (five of which were admitted into evidence as State's Group exhibit No. 1) regarding her substance abuse/addiction.

¶ 8 At the State's request, the trial court took judicial notice of various reports and pleadings in the record, as well as reports and pleadings from the sibling cases.

¶ 9 No other party presented evidence.

¶ 10 The trial court found the State had sufficiently proved the allegations of neglect and entered a written adjudicatory order dated January 27, 2022.

¶ 11 As for the allegations of respondent's unfitness, the trial court found the State had failed to prove count I—her failure to maintain a reasonable degree of interest, concern, or responsibility as to T.L.'s welfare, citing respondent's visits and inquiries about T.L. However, the court found the State had sufficiently proved respondent was an unfit parent due to her habitual drug addiction, evidence of which had been present for at least one year immediately prior to the commencement of the unfitness proceeding (750 ILCS 50/1(D)(k) (West 2020)). The court based

its decision on (1) the presence of cocaine and cannabis in T.L.'s meconium at birth in October 2021, (2) respondent's noncompliance with substance-abuse treatment and services resulting in the termination of her parental rights to T.L.'s siblings in June 2021, and (3) respondent's admission of using cocaine during her pregnancy.

¶ 12    On February 8, 2022, the trial court conducted a dispositional/best-interest hearing. The court noted it had found respondent unfit based on the testimony at the previous hearing. Respondent initially failed to appear. However, she joined the hearing via Zoom during the testimony of the State's only witness, the Children's Home and Aid caseworker, Makenzie Hill. Hill testified T.L. was placed with her godmother upon being discharged from the hospital after birth. The foster home was a clean, safe, and healthy environment. At this point, respondent left the hearing and did not return.

¶ 13    The guardian *ad litem* presented the testimony of the godmother/foster mother, La-Tia Horton. Horton testified she was with respondent at the hospital during T.L.'s birth. She had known respondent since she was eight or nine years old. Horton said T.L., who was four months old, was doing well. Horton described T.L. as a "complete blessing" and indicated she was more than willing to adopt her.

¶ 14    The trial court orally announced its decision, finding it to be in T.L.'s best interest to terminate respondent's parental rights. On February 11, 2022, the court entered a written dispositional order and an order terminating respondent's parental rights.

¶ 15    This appeal followed.

¶ 16    II. ANALYSIS

¶ 17    On appeal, appellate counsel seeks to withdraw on the basis that he cannot raise any arguments of potential merit.

¶ 18             The procedure for appellate counsel to withdraw set forth in *Anders*, 386 U.S. 738, applies to findings of parental unfitness and termination of parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). Under this procedure, counsel's request to withdraw must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. Counsel must "(a) sketch the argument in support of the issues that could conceivably be raised on appeal, and then (b) explain why he believes the arguments are frivolous." *S.M.*, 314 Ill. App. 3d at 685. Counsel must then conclude the case presents no viable grounds for appeal. *Id.* In doing so, counsel should review both the unfitness finding and the best interest determination and indicate in the brief that he or she has done so. *Id.* at 685-86.

¶ 19             In the instant case, counsel asserts he has reviewed the record on appeal, including the report of proceedings of the termination hearing, and has concluded there are no appealable issues of merit. Counsel asserts he has considered raising the argument that the trial court's finding of unfitness was against the manifest weight of the evidence. He also indicates he has considered raising the argument the State failed to prove by a preponderance of the evidence it was in T.L.'s best interest to terminate respondent's parental rights. We address each argument in turn and ultimately agree with counsel's conclusion there are no issues of arguable merit to be raised on review.

¶ 20                           A. Finding of Parental Unfitness

¶ 21             Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(k) of the Adoption Act (750 ILCS 50/1(D)(k) (West 2020)), a parent may be found unfit if she has habitual addiction to drugs, other than those prescribed by a

physician, for at least one year immediately prior to the commencement of the unfitness proceedings. "A habitual addiction to drugs 'means the inability or unwillingness to refrain from the use of drugs where frequent indulgence has caused a[ ] habitual craving, manifested by an ongoing pattern of drug use. *** [E]vidence of indulgence without intermission is not necessary to prove addiction. It is sufficient to show that a person has demonstrated an inability to control his or her habitual craving.' " *In re Adoption of H.B.*, 2012 IL App (4th) 120459, ¶ 48 (quoting *In re Precious W.*, 333 Ill. App. 3d 893, 899 (2002)).

¶ 22        "A trial court's determination that a parent's unfitness has been established by clear and convincing evidence will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *Gwynne P.*, 215 Ill. 2d at 354.

¶ 23        Here, the State commenced unfitness proceedings on November 29, 2021. One year prior, in November 2020, respondent was involved in neglect proceedings relating to three other children. Pursuant to one of the State's exhibits presented to the trial court, one of respondent's minor children, the subject of Winnebago County case No. 19-JA-220, was born substance exposed. Respondent, who became pregnant with T.L. sometime around February 2021, admitted to using cocaine during her pregnancy. She tested positive for cannabis and cocaine throughout the pregnancy and at T.L.'s birth. In June 2021, according to another of the State's exhibits, her parental rights to her other children were terminated due to her failure to make reasonable progress and/or reasonable efforts toward addressing her drug-addiction issues.

¶ 24        Further, T.L. was born with cocaine and cannabis in her blood, urine, or meconium which, pursuant to the statute, created a rebuttable presumption that respondent was unfit. See 750 ILCS 50/1(D)(k) (West 2020). Respondent did not rebut that presumption. Given this record, we

find not only was the trial court's finding of unfitness not against the manifest weight of the evidence but, we find no reasonable or meritorious argument could be made to the contrary.

¶ 25                              B. Best Interest Determination

¶ 26         Appellate counsel indicates he considered arguing the trial court's best interest finding was against the manifest weight of the evidence.

¶ 27         When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-3(4.05) (West 2020)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination need not contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19.

¶ 28    At a best-interest hearing, the State must prove by clear and convincing evidence that termination of parental rights in in the best interest of the minor. *D.T.*, 212 Ill. 2d at 366. On review, "[w]e will not disturb a court's finding that termination is in the children's best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 29    In the instant case, while the trial court did not expressly reference section 1-3(4.05) of the Act, it explicitly stated it "considered the statutory best[-]interests factors as [they] relate to this minor, [T.L.]'s age and developmental stage." The court considered the testimony of Hill and Horton. Hill had testified T.L. was born a "substance exposed minor" and immediately upon discharge from the hospital, she was placed with Horton, who was "more than willing" to have T.L. on a permanent basis. Hill testified Horton's home was safe and appropriate, with no issues or concerns.

¶ 30    Horton had testified to her dedication to and love for T.L. She said she was "blessed to have her" and is committed to providing T.L. permanency through adoption. Horton testified she was at T.L.'s birth and even "cut her umbilical cord." She said she had "been right there with her since she took her very first breath. *** So I mean it is safe to say she my baby." Horton testified her extended family loves T.L. The trial court told Horton she was "doing a great job" as T.L.'s foster parent.

¶ 31    Given this minor was only four months old at the time of the best-interest hearing, many of the statutory factors do not apply. Nevertheless, based on this record, including the consideration of the applicable best-interest factors, we conclude the trial court's best interest finding was not against the manifest weight of the evidence.

¶ 32                        III. CONCLUSION

¶ 33    For the reasons stated, we allow appellate counsel to withdraw and affirm the trial court's judgment.

¶ 34    Affirmed.